THE REPUBLIC LIFE INSURANCE COMPANY

150:18 LRA25

*v.*

CHARLES P. SWIGERT, Auditor, and SAMUEL D. WARD, Receiver.

*Filed at Ottawa October 31, 1890.*

1. INSURANCE COMPANIES—*dissolution—powers of the Auditor—constitutionality of the act of 1874.* Section 1 of the act of 1874, in regard to the dissolution of insurance companies, which authorizes the Auditor of State to institute proceedings in equity to wind up the concerns of such companies, when he is of opinion, upon examination of their affairs, that they are unsafe, is not unconstitutional, but is a valid law.

2. SAME—*powers of receiver—how acquired—deed of transfer not necessary.* In a proceeding by the Auditor to close the affairs of an insurance company, the statute does not require the company to execute a deed of assignment of its property to the receiver, when appointed, but the property rights of the company are, by force of the statute and the decree of the court, committed to the receiver, to be administered upon as the court may direct.

3. SAME—*powers of receiver—statutory—and such as are conferred by order of court—or by deed of assignment.* The powers of a receiver specially designated in the statute relating to insurance companies, are not materially different from those of an assignee under the Voluntary Assignment act. In both acts the powers specified are limited to the enforcement of property rights derived from the corporation or assignor.

4. It is not a power inherent in the court of chancery, and it is not in conformity with the course of procedure and practice which ordinarily obtains in equity, for the court to clothe its receiver with power to seize and enforce a property right which belongs only to parties who are not before the court and who are not asking its assistance.

5. Where a court of chancery, on the petition of the State Auditor, appoints a receiver to wind up the business of an insurance company, it is error for the court to direct the receiver to institute suit against the shareholders to collect their subscriptions to the capital stock, after the company has, by contract, put it out of its own power to collect such unpaid subscriptions. The receiver, in such a case, will have no greater powers than the company he represents. He is the representative of the company, and does not represent its creditors.

6. A deed of assignment of an insurance company, made under a decree of court, on the Auditor's petition to close the business of the

corporation, transfers to the receiver no greater rights than would be transferred by the deed of an insolvent debtor under the Voluntary Assignment act. The deed will not pass any rights not possessed by the corporation. Therefore, the assignee will not take the rights of the creditors to impeach the acts of the corporation. One can not transfer to another a right which he does not have, unless he is acting under a power.

7. RECEIVER—*of his powers, generally—and whom he represents.* A receiver appointed to take charge of a corporation, is, for the purpose of determining the nature and extent of his title, regarded as representing only the corporate body itself, and not its creditors or shareholders, and for the purpose of litigation he takes only the rights of the corporation such as can be asserted in the name of the corporation itself. Upon this basis, only, can the receiver litigate for the benefit of either shareholders or creditors.

8. PARTIES—*closing affairs of insurance company—on application of the Auditor.* On petition by the State Auditor to wind up the affairs of an insurance company, or restrain its further transaction of business, the stockholders of the corporation are not necessary parties. In such a case it is the duty of the corporation to protect the interests of its stockholders, and it may assign for error any matter injuriously affecting their interests.

9. CORPORATIONS—*buying and selling their own stock.* A corporation may, if it acts in good faith, buy and sell shares of its own stock.

10. The charter of an insurance company made each stockholder liable for the debts of the company to the extent of his unpaid stock. Under a resolution duly passed, the corporation canceled all certificates of stock not fully paid, and issued new paid up certificates for the amount of the surrendered stock actually paid : *Held,* that this, in legal effect, was a purchase by the company of the unpaid stock at its par value, and was binding as between the stockholders and the corporation, and could not be avoided by a receiver of the company.

11. ASSIGNMENT OF ERROR—*on interlocutory order.* Where an interlocutory order involves and determines a matter of substantial right, and is continued in force by the final decree, error may be assigned upon such order.

12. PRACTICE IN THE SUPREME COURT—*matters of record.* Where a cause, at its first hearing in this court, is submitted by both parties, upon the theory that the order appealed from is properly in the record and before the court for review, such order will be treated as in the record when the cause is brought up a second time.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

Messrs. Sleeper & Whiton, for the plaintiff in error:

A receiver of an insolvent corporation, for purposes of litigation, takes only the rights of the corporation such as can be asserted in its own name, except where acts have been in fraud of the rights of the latter, and which are valid as against the corporation itself, in which case he holds adversely to the corporation. High on Receivers, secs. 315, 320, 250; *Curtiss* v. *Leavitt*, 14 N. Y. 44; *Hayes* v. *Kenyon*, 7 R. I. 136; *Gillett* v. *Moody*, 3 N. Y. 479; *Gillette* v. *Phillips*, 13 id. 114; *Osgood* v. *Layton*, 3 Keyes, 521; Edwards on Receivers, 141.

The receiver of an insolvent corporation represents not only the corporation, but also the creditors and stockholders. In his character as trustee for the latter he may disaffirm and maintain an action as receiver, to set aside illegal or fraudulent transfers of the property of the corporation. *Attorney General* v. *Insurance Co.* 77 N. Y. 275; *Furnace Co.* v. *Peters*, 40 Ohio St. 575; *Pollard* v. *Bailey*, 20 Wall. 520; *Terry* v. *Little*; 101 U. S. 216; *Smith* v. *Hickobee*, 53 Ala. 191.

Mr. George F. Westover, also for the plaintiff in error.

Mr. C. Beckwith, also for the plaintiff in error:

The exchange of part paid for full paid stock was a valid transaction as between the parties thereto, and no one except a creditor can avoid the same.

The receiver took no greater powers than the company had.

Error can not be assigned upon an interlocutory order, but after final decree confirming such interlocutory order, error may be assigned.

Corporations may buy their own stock. *Railroad Co.* v. *Marseilles*, 94 Ill. 145; *Chetlain* v. *Insurance Co.* 86 id. 220; *Strong* v. *Railway Co.* 93 N. Y. 426.

No form of liquidation of an insolvent or bankrupt corporation authorized by a State law has any force whatever, so far as it conflicts with any law of Congress upon the same

subject.   *Thornhill* v. *Bank,* 1 Woods, 1; *In re Independent Association Co.* 1 Holmes, 105; *Ex parte Eames,* 2 Story, 322; *Sturges* v. *Crowningshield,* 4 Wheat. 122; *Ogden* v. *Saunders,* 12 id. 213; *May* v. *Breed,* 11 Cush. 40; *Griswold* v. *Pratt,* 9 Metc. 23.

Messrs. HUTCHINSON & LUFF, for Ward, the receiver:

The order appointing a receiver and restraining the company from further proceeding with its business, having been entered by consent of the company, error can not be assigned upon it. *Armstrong* v. *Cooper,* 11 Ill. 540; *Haas* v. *Building Society,* 80 id. 248.

The order appointing the receiver was one within the sound discretion of the court, and error can not be assigned upon it. *Woods* v. *Young,* 4 Cranch, 237; *Insurance Co.* v. *Hodgson,* 6 id. 206; *Jenkins* v. *Brown,* 21 Wend. 454; *Crain* v. *Bailey,* 1 Scam. 321; Powell's App. Proc. 336, 398.

The order complained of was for the benefit of the company. It was for the interest of the corporation that a sufficient amount of its unpaid stock should be collected to pay its debts. Unless the whole record shows that the order was to the prejudice of the company, even if it were error, this court will not annul it.   *Douglas* v. *Soutter,* 52 Ill. 154; *Clark* v. *Marfield,* 77 id. 258; *Richards* v. *Greene,* 78 id. 525; *Hedges* v. *Mace,* 72 id. 472; *Van Valkenburg* v. *Trustees of Schools,* 66 id. 103; *Schlencker* v. *Risley,* 3 Scam. 483; *Bosley* v. *Insurance Co.* 3 Gill & J. 450; *Hughes* v. *Stickney,* 13 Wend. 280; Powell's App. Proc. 131, 133.

The order complained of was interlocutory, and had no relation whatever to the final decree, and the court will not reverse an interlocutory order, when it appears, upon the whole record, that there is no error in the final decree. *Hanford* v. *Blessing,* 80 Ill. 188.

The statute under which the receiver was appointed, empowered the court to "make such orders and decrees, from

time to time, as the exigencies and equities of the case may require," and expressly authorized the receiver to prosecute and defend suits in his own name, and do all other acts necessary for the collection, marshaling and distributing of the assets of the company. Rev. Stat. chap. 73, secs. 103, 107.

The receiver of an insolvent corporation is a trustee for the creditors. High on Receivers, sec. 314; *Gillett* v. *Moody*, 3 N. Y. 479; *Talmage* v. *Pell*, 7 id. 347.

Where acts have been done in fraud of the rights of creditors, but which are valid as against the corporation itself, the receiver holds adversely to the corporation, and may sue the stockholders in his own name. High on Receivers, sec. 315; *Curtiss* v. *Leavitt*, 15 N. Y. 44; *Gillet* v. *Moody*, 3 id. 479; *Porter* v. *Williams*, 5 Seld. 142; *Nathan* v. *Whitlock*, 9 Paige, 152; *Sawyer* v. *Hoag*, 17 Wall. 619; *Jacobson* v. *Allen*, 20 Blatchf. 525; *Osgood* v. *Osgood*, 4 Keyes, (43 N. Y.) 70.

The act in regard to the dissolution of insurance companies, under which this proceeding was instituted, is not an insolvent law. The only insolvent law in force in this State at the time of the filing of the Auditor's petition was "An act concerning insolvent debtors," in force July 1, 1872. Rev. Stat. chap. 72; *Mayer* v. *Hellman*, 91 U. S. 496.

The State Insolvent law was not suspended, nor the jurisdiction of the State courts divested, by the passage of the Bankrupt law. That law had no effect upon the jurisdiction of the State courts over persons or property until the institution of proceedings in bankruptcy. *Hawkins' Appeal*, 34 Conn. 548; *Shepardson's Appeal*, 36 id. 23; *Maltbie* v. *Hotchkiss*, 38 id. 80; *Clark* v. *Ray*, 1 H. & J. 318; *Reed* v. *Taylor*, 32 Iowa, 209; *In re Clark*, 4 Ben. 88; *Sedgwick* v. *Menck*, 6 Blatchf. 156; *Ex parte Ziegenfuss*, 2 Ired. 463; *Chandler* v. *Siddle*, 3 Dill. 477; *Mayer* v. *Hellman*, 91 U. S. 496.

Mr. JNO. N. JEWETT, also for Ward, the receiver.

Mr. JUSTICE BAKER delivered the opinion of the Court:

On the 25th of May, 1877, the State Auditor filed his petition in the circuit court of Cook county, against the Republic Life Insurance Company, under the provisions of the act in regard to the dissolution of insurance companies, approved February 17, 1874. The Auditor alleged in his petition that he had caused an examination to be made of the assets and liabilities of the company, and that, from such examination, he was of the opinion that the condition of the company was such as to render its further continuance in business hazardous to the insured therein. The prayer of the petition was, that the company might be enjoined and restrained from further proceeding with its insurance business, and that a receiver might be appointed to take charge of the real estate and effects of the company, in pursuance of the act aforesaid, and with the power therein prescribed, and usually vested in a receiver.

On the same day that the petition was filed the company waived service of process, and entered its appearance, and filed an answer, which was as follows: "Now comes the said defendant, by its solicitor, and saith that it can not deny the matters in said bill alleged, and it prays to be hence dismissed," etc. Thereupon, and on the same day, on motion of the solicitors for the Auditor, and no objection being made by the company, Samuel D. Ward was appointed receiver. It was also ordered, that the company, its officers, agents, attorneys and servants, be enjoined and restrained, until the further order of the court, from further proceeding with its business, or from any transfer of the property other than to the receiver, and from receiving or paying out any moneys, and that neither the receiver nor the defendant, nor its officers, agents, servants or attorneys, should exact or take from its policy holders any sum or sums of money to accrue from premiums on policies, beyond what might be justly due or payable on or as of the 25th day of May, 1877.

It was specified in the order appointing the receiver, that said Samuel D. Ward "be and is hereby appointed receiver of, all and singular, the real estate, personalty, choses in action, bonds, bills, notes, securities, evidences of indebtedness, books, records, moneys, checks, drafts and property, and assets of every nature, real and personal, of and belonging to said defendant, or in any manner held in trust for or subject to the control of said defendant, as the same are on this 25th day of May, with power to take possession of the same forthwith, and to institute any and all necessary proceedings or actions to recover the same, either at law or in equity." And it was further ordered, that the president and secretary of the company should forthwith execute and deliver to the receiver all necessary deeds, conveyances and assurances of title proper and requisite to carry out the foregoing order, and to vest in the receiver full title to, all and singular, the properties, assets and choses in action of the defendant, and that said receiver should have and exercise, all and singular, the rights and powers conferred upon such receiver by the statutes of this State in that behalf, and that he should have the usual powers of a receiver in equity, with liberty to apply to the court, from time to time, for such further directions and orders as might be necessary to the discharge of his trust. In conformity with this order and decree, the officers of the company made to the receiver deeds for all the real estate of the company, and on May 27, 1877, the president and secretary executed and delivered to him an assignment of all the property of the company, and immediately turned over to him such property.

On December 1, 1877, the receiver presented to the court a petition, in which it was stated, that at a meeting of the stockholders of the Republic Life Insurance Company, held on the 11th day of June, 1873, the following resolutions were adopted, to-wit:

"*Resolved*, That the board of directors of this company be and the same is hereby instructed and empowered to receive

.from such of the stockholders as may desire, and to cancel, .all outstanding certificates of the stock of this company upon ·which but twenty per cent has been paid, and to issue in place thereof a new certificate to each stockholder for the :number of shares, at par, represented by the twenty per cent .already paid, or secured to be paid, by such stockholder or .stockholders.

"*Resolved,* That the remainder of the stock of this company .be held as unissued stock, subject to sale and issue, as the ·directors shall deem best, but at par, and for cash, only, ex- .clusive of expense and commissions."

It further appeared from said petition, that in pursuance ·of said resolutions a large number of the subscribers to the .stock of said company surrendered their certificates of stock .upon which but twenty per cent had been paid, and received in lieu thereof certificates for one-fifth the number of shares ·of stock so surrendered, which said new certificates represented the holders thereof as entitled to the number of shares of full paid stock therein respectively specified. It also appeared from the petition, that the largest proportion of the liabilities ·of the company was contracted before the said 11th day of June, 1873, when, by vote of the stockholders, the directors .were authorized to issue full paid certificates of stock on the .surrender of the certificates on which only twenty per cent had been paid. The petition stated: "Your petitioner knows of ·no resources out of which he will be able to realize any money ·to pay the balance of the liabilities of said company, over and .above twenty or twenty-five per cent thereof, unless the same can be collected of said stockholders and subscribers to said ·stock." The prayer of the petition was for the direction of the court in the premises, and for such other and further order in reference to the matter of commencing proceedings against :said subscribers and stockholders as should seem just and .proper.

On January 31, 1878, an order was entered in said cause, which was as follows, to-wit: "Samuel D. Ward, receiver of said defendant, having heretofore, to-wit, on the 1st day of December, A. D. 1877, filed his petition herein, asking for the direction of the court in reference to further legal proceedings against the subscribers to the stock and stockholders of said defendant, and it appearing to the court that said receiver has published a notice, etc., that the application contained in said petition would be heard on this day, etc., and said application now coming on to be heard, after argument by counsel for said receiver and for said complainant, and the court being advised in the premises, it is ordered by the court that the said receiver be and he is hereby authorized and directed to institute such legal or equitable proceedings as he may be advised are necessary and proper, against the subscribers to the stock and stockholders of said defendant, or against such of them as he may be advised are or may be indebted to the said company, and that he institute such proceedings against resident and nonresident subscribers to stock, and stockholders, or either of them, and proceed with all convenient speed with the same, for the purpose of collecting a sufficient amount to pay the debts and liabilities of said defendant."

On the 22d day of June, 1881, the cause came on for a hearing in the circuit court, and the court rendered a final decree therein, overruling the prayer of the company, in its answer, to be dismissed out of court, and decreeing that the company be perpetually enjoined, restrained and prohibited from the further prosecution of its business, and that the previous appointment of Ward, as receiver, be ratified and confirmed. Thereafter a writ of error was sued out of this court by the Republic Life Insurance Company. The errors assigned upon the amended record which was filed in this court, were, that the court erred in not dismissing the petition of the Auditor, as prayed for in the answer of the plaintiff in error, and that

the court erred in making each and every of the orders and decrees set forth in the record aforesaid.

In the briefs and arguments which were filed on behalf of the plaintiff in error prior to the rehearing, the grounds of objection urged to the decree and orders of the court were, that the allegations of the petition filed by the Auditor were not sufficient to sustain the final decree, and that it was therefore erroneous; that the law authorizing the appointment of a receiver, and the dissolution and winding up of the company and its affairs, was violative of the contract clauses of both the Federal and State constitutions, and the act therefore void and the decree erroneous; and that, even assuming the act to be valid and the allegations of the petition to be sufficient, the court had no power, on the application of the receiver, to authorize him to call in question the surrender of subscriptions to capital stock and the receipt of paid up stock for the money paid on such subscriptions, as being in fraud of the rights of creditors, and that such transaction could be impeached only by and on the application of creditors of the company.

Section 1 of the act of 1874, now under consideration, provides: "That if the Auditor of State, upon examination of any insurance company incorporated in this State, is of the opinion that it is insolvent, or that its condition is such as to render its further continuance in business hazardous to the insured therein, or to the public,  *  *  *  he shall apply, by petition, to a judge of any circuit court of this State, to issue an injunction restraining such company, in whole or in part, from further proceeding with its business until a full hearing can be had, or otherwise, as the court may direct." The further clause of this section provides that the court "may, in all such cases, make such orders and decrees, from time to time, as the exigencies and equities of the case may require, and in any case, after a full hearing of all parties interested, may dissolve, modify or perpetuate such injunction, and make all such orders and decrees as may be needful to suspend, restrain or

prohibit the further continuance of the business of the company." Section 5 of the act provides for the appointment by the court of one or more receivers, "to take charge of the estate and effects of the company, including such securities as may be deposited with the Auditor or Treasurer of State, and to collect the debts due and property belonging to it, with power to prosecute and defend suits in the name of the corporation, or in their own names, to appoint agents under them, and do all other acts necessary for the collection, marshaling and distributing of the assets of the company and the closing of its concerns."

The petition which was filed by the Auditor in this cause contained all the averments that section 1 of the act requires to enable the court to grant an injunction and to appoint a receiver. The allegations of the petition conferred jurisdiction to render a decree appointing a receiver, and perpetually enjoining the further prosecution of the business of the corporation, and decreeing its involuntary dissolution, and especially so since the company answered that it could not deny the matters alleged in the petition.

The constitutional question which is argued by counsel was fully considered by this court in *Ward* v. *Farwell*, 97 Ill. 593. It was there held that the statute now under consideration was constitutional. It is not necessary to again state the reasons which led to that conclusion.

Was the order which was entered by the court on the 31st day of January, 1878, directing the receiver to institute proceedings against stockholders, erroneous? Preliminary to giving attention to this question, there are several matters which may properly be examined.

It is urged that said order of January 31, 1878, is not in the record, except as a matter of evidence. The record consists of the record which was originally filed in this court, and of an additional or supplemental record which was afterwards filed. This latter record contains the pleadings and the orders

and proceedings in the cause. It is informally made up, and after the statement that "petitioner, in support of his motion for a perpetual injunction, introduced on the hearing the following evidence," follow the various petitions, answers, proceedings and orders in the cause. The certificate of the clerk is, that the transcript is a true, perfect and complete transcript of the record, prepared in accordance with the stipulation of counsel contained in the record. The stipulation was filed in the cause, and immediately precedes the certificate of the clerk, and it is, in substance, that the record first filed in this court, "together with the foregoing record, as made up for said Supreme Court, * * * shall be taken as the complete record in said cause for the purposes of this suit." There is also indorsed upon said record a stipulation, signed by the solicitors for the defendants in error, that the errors assigned upon the record originally filed may be considered as assigned and made upon said amended record, and one of the errors so assigned is, that "the court erred in making each and every of the orders and decrees set forth in the record aforesaid." It would seem that the transcript was made up for this court in the way in which it was by consent of counsel for both parties, and probably for the purpose of avoiding the supposed necessity of copying the pleadings, proceedings and orders twice in the record, and at the same time showing that the same were given in evidence in support of the motion for a perpetual injunction. Upon the first hearing of this cause in this court it was submitted by both parties to the controversy, upon the theory that the order in question was properly in the record and before the court for review. The case was heard and determined upon that assumption. We must now regard that order as a part of the record, and as legitimately before us for examination.

It is suggested that it is for the interest and benefit of the corporation that a sufficient amount should be collected from its stockholders to pay its debts, and that it can not be heard

11—135 Ill.

to complain of the order directing suits to be brought against such stockholders. In *Ward* v. *Farwell, supra,* it was held that on a petition filed by the Auditor to dissolve an insurance company or to restrain its further transaction of business, the stockholders of such corporation were not necessary parties to the proceeding. It would seem, then, that in any matter which affects the rights or interests of the stockholders, the company must, from the nature of the case, have the right to protect its stockholders, and that it is its duty so to do. A contrary conclusion would be subversive of justice, and in antagonism with first principles.

It is claimed that the order of the court now under investigation does not direct the receiver to proceed either at law or in equity against stock subscribers or stockholders, whether they have surrendered their certificates of partly paid stock or not. It must be conceded that it does not in express terms direct or authorize such suits. But in order to apprehend the full scope of the order it is necessary to take into consideration one or two matters which are here not thus far stated.

Section 6 of the charter of plaintiff in error provides as follows: "The real and personal property of each individual stockholder shall be held liable for any and all liabilities of the company to the amount of stock held or subscribed by him and not actually paid in. In all cases of losses exceeding the means of the corporation, each stockholder shall be liable to the amount of unpaid stock held by him."

A corporation may, if it acts in good faith, buy and sell shares of its own stock. (*Chicago, Pekin and Southwestern Railroad Co.* v. *Marseilles,* 84 Ill. 145; *Same* v. *Same,* id. 643; *Chetlain* v. *Republic Life Ins. Co.* 86 id. 220; *Clapp* v. *Peterson,* 104 id. 26.) The surrender by stockholders, to the company, of the certificates of stock upon which twenty per centum had been paid, and the issuance to such stockholders of certificates for paid up stock, was, in substance and in legal effect, a purchase by the company of the unpaid stock at its par

value. The transaction was not *ultra vires*. It was based upon resolutions adopted by the corporation at a stockholders' meeting. It does not appear that any stockholder has ever objected either to the resolutions or to the transfers of stock, which, in conformity therewith, took place between the corporation and such of the stockholders as elected to avail themselves of the privilege given thereby. The contracts were valid as between the company and the stockholders who gave up their part paid stock, and received in lieu thereof full paid stock for one-fifth of the amount relinquished. · The transaction was binding upon the company, and the stockholders who sold their stock to the corporation should be protected against further payments upon their subscriptions, unless there were, at the time of such transaction, existing creditors in respect to whose rights it was fraudulent. It is to be noted, that thereafter, as between such stockholders and the company, there was no indebtedness to the company in regard to the subscriptions for stock.

Such being the law, and the condition of affairs being such as has already been sufficiently indicated herein, the circuit court made the order of January 31, 1878, authorizing and directing the receiver to institute legal or equitable proceedings, not only against such of the subscribers to the stock and stockholders as he should be advised "are or may be indebted to the said company," but also "against the subscribers to the stock and stockholders of said defendant." The language of the order is broad enough to cover suits prosecuted upon the liability of the stockholders to the creditors, and where the only liability is to the creditors. Construing the order in the light of the petition of the receiver, upon which it was based, the purpose of it was clearly to authorize and direct the receiver to sue for and recover from the stockholders, subscriptions for stock which they had, under the resolutions of the 11th of June, 1873, surrendered to the company. We think, therefore, that the grounds which are urged by plaintiff in

error for the reversal of that order clearly appear upon the face of the order, when properly construed.

It is suggested that the order in question is merely an interlocutory order, and that error can not be assigned thereon. But that order is still in force by virtue of the final decree, and it involves and determines a matter of substantial right, and we understand that under such circumstances error may be assigned upon an interlocutory order.

If the order directing proceedings against the stockholders who had transferred their unpaid stock to the corporation was valid and was not erroneous, it seems it must necessarily be so either because the assignment made by the company to the receiver invested the latter with such title, right or power as would enable him to maintain such suit, or because a receiver has authority, under the rule which prevails in the chancery courts, to avoid the voluntary and lawful acts of the person or corporation whose estate he represents, or may be clothed with such power by the court of chancery which appointed him, or because the statute for the dissolution of insurance companies makes the receiver appointed in conformity with its provisions, the representative of the creditors of the company that is restrained from the further prosecution of its business.

We will first consider the matter of the deed of assignment. It has been suggested that the transfer of the unpaid stock to the company did not operate as an absolute discharge of the stockholders' indebtedness for such stock, but was a discharge *sub modo*, only; that the debts continued to exist just as they did before, for the purpose of liquidating the claims of the creditors; that the company continued to be the creditor, and the subscribing stockholders the debtors, so far as the creditors of the company are concerned; and that, the legal title and interest in the debts remaining in the company for the benefit of its creditors, such legal title and interest, and the right of the company to control the claims, passed to

the receiver by virtue of the company's assignment to him, in pursuance of the order of the court directing such assignment. The statement of this theory is qualified by the expression, "for the benefit of the creditors," and other expressions of like import.   It is to be borne in mind that there are no creditors who were parties to the proceeding the record of which is now before us.   The statement also includes the element of "the right of the company to control the claims."   But the transaction in question was lawful and valid, so far as the company itself was concerned, and was binding upon it, and it had no right to impeach it,—only the creditors were entitled to that privilege; and the company had no authority to enforce or "control" the claims, and it could not pass, by its deed of assignment, to any one, either assignee or receiver, any right of control or enforcement that it did not itself have.

It would seem that the company, by its deed of assignment to the receiver, did not transfer to him any rights greater or in addition to those that would have been conveyed had the assignment been made to an assignee under the Voluntary Assignment law.   The provisions of the assignment now under investigation are no broader or more comprehensive than those that would have been contained in a deed made to such assignee, and, even if they were, it would be immaterial, for in the nature of things one can not transfer to another a right which he does not have, unless he is acting under a power.

In the case of *Bouton* v. *Dement*, 123 Ill. 142, this court, in speaking of an assignment under the act relating to assignments for the benefit of creditors, said: "The company, by its assignment, conveyed no greater right, in respect to its property, than the company itself possessed.   It is a rule of extensive prevalence, that a general assignment for the benefit of creditors does not pass to the assignee any interest in property before fraudulently transferred by the assignor, nor any right to impeach or set aside such fraudulent transfer, such right belonging to the creditors, only.   *   *   *   As held by

this court, an administrator can not, even for the benefit of creditors, avoid a fraudulent conveyance made by his intestate. * * * We think consistency with our decision with respect to administrators requires the adoption of the rule above stated. It would seem, upon principle, that the same rule in this respect which exists in regard to an administrator should be held to apply to an assignee under a voluntary assignment. We do not perceive that our statute respecting assignments makes any change of the rule. The assignee, under the above doctrine, is not the representative of creditors, but the agent of the assignor for the distribution of the property assigned. The assignee's duty * * * is confined to the distribution of the property assigned to him. Any interest in property before fraudulently transferred by the assignor was not assigned to the assignee."

In the cases passed upon by this court in respect to an administrator, and in respect to an assignee under the Assignment act, there were the same elements that are claimed here, —at least so far as the assignment made by the company is concerned. These elements are, the existence of creditors at the time of the transfers of property, and in respect to which creditors such transfers were or were claimed to be fraudulent, and a subsequent vesting in another person, either by operation of law or by conveyance of the property rights of the party who has made the supposed fraudulent transfers, and an attempt by such person to enforce the right of creditors to reach, in payment of their debts, the property fraudulently transferred by the person to whose property rights the person making such attempt has succeeded. And there was the same element lacking that is lacking here,—*i. e.*, the right sought to be enforced had not been vested in the person from whom title and interest were derived.

We think that consistency with this decision in *Bouton* v. *Dement*, in regard to an assignee under a voluntary assignment, as well as consistency with the decision of the court

in regard to an administrator, requires that the same rule should be adopted in this case in respect to the effect of the assignment that was executed by the plaintiff in error to the receiver. In other words, the receiver took, by the assignment made by plaintiff in error, no right to control or enforce the claims against the stockholders growing out of the transaction between the company and some of the stockholders, whereby certificates of stock were surrendered to the company in payment of unpaid subscriptions to capital stock.

The only authority to impeach the sale of the stock to the company being in the creditors of the corporation, the receiver, Ward, if he has such authority, must have it either because the doctrines applicable to proceedings in chancery invest him with an agency and right to act on behalf of the creditors in that regard, or give the court of equity, by virtue of its inherent powers, the prerogative to so invest him, or upon the ground that the statute for the dissolution of insurance companies clothes him with the right to enforce the rights of the creditors in that behalf.

We understand the rule to be, that where a receiver is appointed for the purpose of taking charge of the property and assets of a corporation, he is, for the purpose of determining the nature and extent of his title, regarded as representing only the corporate body itself, and not its creditors or shareholders, being vested by law with the estate of the corporation, and deriving his own title under and through it, and that, for purposes of litigation, he takes only the rights of the corporation such as could be asserted in its own name, and that upon that basis, only, can he litigate for the benefit of either shareholders or creditors. In High on Receivers, (sec. 315,) the rule is formulated substantially and almost in words as stated above, except that the rule is qualified in said section by the statement, that when acts have been done in fraud of the rights of creditors, but which are valid as against the corporation itself, the receiver holds adversely to the corporation.

The only authority cited as sustaining the qualification found in the text is the case of *Curtis* v. *Leavitt*, 15 N. Y. 44. That case was decided upon the basis of such qualification. It was assumed and conceded by counsel, upon the argument of the case, that the receiver succeeded to the rights of creditors. It was announced in the opinion of the court, that "for all the purposes of the present controversy" they would "proceed upon this assumption." The receivership there in question was constituted under statutory provisions in which were found the expressions, "appoint one or more receivers to take charge of the property and effects of the corporation;" "the property that may belong to it;" "are vested with all the estate, real and personal, of such corporation;" "as trustees for the benefit of creditors and stockholders;" "deemed vested with all the real and personal estate of the debtor;" and "power to sue, in their own names or otherwise, and recover all the estate, debts and things in action belonging or due to such debtor, in the same manner and with the like effect as such debtor might or could have done if no attachment had been issued or trustees appointed." COMSTOCK, J., in his opinion, said: "It has been said in this as in other cases, that the receiver represents the creditors and the stockholders; but for all the purposes of inquiry into his title he really represents the corporation. He is by law vested with the estate of the corporate body, and takes his title under and through it. It is true, indeed, that he is declared to be a trustee for creditors and stockholders; but this only proves that they are the beneficiaries of the fund in his hands, without indicating the sources of his title or the extent of his powers. If, then, in a controversy between the receiver and third parties, in respect to the corporate estate, it is possible to form a conception of rights, legal or equitable, belonging to the shareholders as individuals, which the corporation itself could not assert in its own name, the receiver does not represent those rights. So far as the shareholders are concerned, he can litigate respecting the fund upon precisely

the grounds which would be available to the corporation if it were still in existence, solvent, and no receivership had been constituted. In regard to creditors, I should certainly incline to take the same view of his rights and powers under the statutes referred to."

In *Alexander* v. *Relfe*, 74 Mo. 495, it was said in the opinion of the court: "When acts have been done in fraud of the rights of creditors, the receiver may litigate for their benefit, though the acts in question be valid as to the corporation itself, in which case he holds adversely to the corporation." This language was wholly unnecessary to the decision of the case, and the only authority cited therefor was "High on Receivers, sec. 315, and cases cited," which we have mentioned and considered above.

In *Hyde* v. *Lynde*, 4 N. Y. App. 387, it was said by Bronson, C. J.: "The recovery in this case seems to have gone upon the ground that the receiver had greater rights than those which belonged to the company. But for most, if not for all, purposes, he took the place and stands as the representative of the company. He is as much bound by a settlement which the company was authorized to make as was the company itself. It would be strange, indeed, if the legal acts of a corporation did not bind the receiver of its effects. \* \* \* If the settlement, though a lawful act in itself, had been made for an illegal purpose,—if, for example, the parties had known that there were valid claims against the company to the payment of which the defendant ought to contribute, and yet the note was given up without consideration, for the purpose of defrauding either the creditors or the other members of the corporation, the persons defrauded would undoubtedly have a remedy. But I do not see how the receiver could sue. It would be like the case of a conveyance of property for the purpose of defrauding the creditors of the grantor, which, though void as against the persons intended to be defrauded, is nevertheless valid against the grantor and all who represent

him.   A receiver of the effects of such a grantor could not avoid the grant; neither can this receiver avoid a settlement which bound the corporation, though, in the supposed case, it was a fraud upon the creditors and other members of the company.   The persons injured must sue."

In *Farnsworth* v. *Wood et al.* 91 N. Y. App. 308, the court said: "The rights of certain creditors to prosecute their claims against certain of the stockholders never were the property of the corporation, nor rights of action vested in it, nor is there any provision of the statute which transfers these rights of action from the creditors to the receiver."

In *Coope* v. *Bowles*, S. C. 42 Barb. 87, it was held that a receiver is not clothed with any right to maintain an action which the parties or the estate which he represents could not maintain, and that he must show a cause of action existing in those parties, and that by the appointment of the court, lawfully made in a matter where the court had jurisdiction, the power had been conferred on him, in his representative capacity, to prosecute the action.

In *Piscataqua Fire and Marine Ins. Co.* v. *Hill*, 60 Me. 178, a bill in equity was brought in behalf of the creditors of the corporation, by the plaintiffs, who were trustees under a winding-up statute, which gave them power to take charge of the estate and effects of the corporation, and to collect its debts, and to prosecute and defend suits.   The defendant was a stockholder, director and treasurer of the company.   The bill charged that he had illegally surrendered securities to stockholders, and that he had illegally sold to the company a large amount of stock, and received payment therefor, when he knew the company was insolvent, and that he had committed a variety of other acts, which were set out in detail, done by virtue of contracts with the company which were alleged to be illegal, fraudulent and void.   A demurrer to the bill was sustained, and it was dismissed.   It was there said: "The trustees represent the corporation, alone, and not its creditors or stock-

holders. * * * The claims of the creditors and of the stockholders, if they have any, are in the first instance against the corporation, and they have no other except as provided by law. If the conduct of the corporation, its officers or stockholders, has been such as to give other remedies to the creditors, such may properly be pursued in their own names. So far as their rights are in question they must be vindicated by themselves, and not by others in their behalf."

In *Waterhouse* v. *Jameson*, 2 Pat. H. L. (Scotch App.) 1812, and Land Reps. 2 S. & D. App. 29, Lord WESTBURY said, before the House of Lords: "I take it to be quite settled that the rights of creditors against the shareholders of a company, when enforced by a liquidator, must be enforced by him in right of the company. What is to be paid by the shareholders is to be recovered in that right. What is due to the company is that, only, which is in fact recoverable by the company. The liquidator, therefore, standing in the place of the company, the question is, has he a right to impeach the memorandum, set aside the articles, reduce the certificate, and recover in right of the company that which the company could not for one moment, as against a *bona fide* shareholder, be entitled themselves to recover? I entirely adopt, in few words, what fell from my noble and learned friend (Lord CAIRNS) in the case of *In re Duckworth*, (L. R. 2 Ch. App. Cases, 577,) where my noble and learned friend used these words: 'The liquidator represents the creditors only because he represents the company, and through the company the rights of the creditors are to be enforced.' * * * Could the company recover against him? If there had been no winding-up order the question would not have admitted of a moment's doubt, and the winding-up order does not place the liquidator in a better position against the shareholder than the company were in."

In the same case, Lord CHELMSFORD said: "It is contended on the part of the respondent, that under the winding-up order the liability of the appellant is entirely changed; that it is com-

petent to the official liquidator, who, it is said, represents not only the company but also the creditors of the company, to show that the company was founded on misrepresentation; that the allegation in the memorandum and articles of association. that £100,000 had been paid, was false; that the statement on the register of £100 having been paid on the appellant's shares was also false, and that the liquidator is therefore entitled to make calls upon the. appellant to the extent of £100, not actually but only nominally paid on each of his shares. Upon examining the *Companies Act*, 1862, I find nothing to warrant the assertion that the powers of the liquidator are as. extensive and searching into the constitution of a company as is thus alleged.    He is appointed for the purpose of assisting. the court in the winding up of a company, but in all his proceedings he appears to be merely substituted for the company."

In *Litchfield's case*, L. R. 1 Eq. 231, John and Robert Claypole conveyed a patent right to the British and Foreign Cork Company, and received shares of paid up stock therefor. No money was paid.    A portion of these shares was afterwards. transferred to Litchfield.    It was contended that the transaction was a fraud on creditors, and the liquidator applied to have Litchfield's name put upon the list of contributories, it being claimed that the shares transferred to him were not paid up shares.    It was held, that the right of creditors was only to get payment of their debts from those shareholders who were liable to contribute to the payment, and that the holders. of paid up shares were not liable to so contribute.    It was further held, that it was not necessary to inquire whether the creditors could obtain any relief by bill in chancery.

Defendant in error cites numerous cases in which it has been decided that a receiver could bring suit to set aside a transaction which was binding upon the person or corporation over whose estate he was appointed.    Almost all of the cases cited by defendant in error fall in one or another of the four classes following:    Where the receiver, by force of some stat-

ute, can act for the creditors; where the act complained of was *ultra vires,* and not binding upon the corporation; where the receiver was appointed in a proceeding prosecuted by creditors, which was supplemental to execution, and the receiver had the rights of the creditors at whose instance and to secure whose claims he was appointed; and where the receiver was suing for property or assets that belonged to the debtor. With the law of such cases we have no fault to find. To analyze and examine the various cases cited would unduly expand the proportions of this opinion, and would accomplish no useful purpose. We do not wish to be understood as saying that there is no conflict in the authorities in regard to the matter under consideration; but we think the decided weight of authority sustains the rule in respect to the powers of receivers, where there has been no enlargement of their powers by legislative enactment, that they have such rights of action, only, as were possessed by the persons or corporations upon whose estates they administer.

A receiver is the right hand and creature of the court of equity, and he has such powers as are conferred upon him by the order appointing him, and the course and practice of the court. It will hardly be claimed, however, that the court of chancery, even with all its inherent powers, is authorized, in the absence of legislative sanction, to clothe its receiver with power to seize and enforce a property right which belongs only to parties who are not before the court nor asking its assistance.

What are the powers of a receiver under the provisions of the act for the dissolution of insurance companies, and to what extent have his powers, according to the usual course and practice of the court, been increased thereby? Section 5 of the act provides for the appointment of "one or more persons to be receivers, to take charge of the estate and effects of the company, including such securities as may be deposited with the Auditor or Treasurer of State, and to collect the debts due,

and property belonging to it, with power to prosecute and defend suits in the name of the corporation or in their own names, to appoint agents under them, and do all other acts necessary for the collection, marshaling and distributing of the assets of the company and the closing of its concerns." Section 6 of the act is as follows: "The receiver shall pay all debts due from the company, if the funds in his hands are sufficient therefor, and if not, he shall distribute the same ratably among the creditors who prove their debts, in such manner as the court may direct; and receivers may be authorized by the court to sell, convey and dispose of, and convert into money, any of the securities or assets of the company, for the purpose of paying such debts and distributing such funds. If there is a balance remaining after the payment of the debts, the receiver shall distribute the same among those who are justly entitled thereto, as members, stockholders, or otherwise, or their legal representatives." These two sections contain all of the powers that are expressly given to the receiver by the statute.

It will be noted that no provision is made in the act for the execution of an assignment by the corporation to the receiver. It would seem that the property rights of the company are committed, by force of the statute and by virtue of the decree of the court appointing a receiver, to the charge of such receiver, to be sued for, sold, conveyed and disposed of, and converted into money, as the court may direct. It appears that a decree ordering the execution of an assignment, and the making of an assignment to the receiver, are not necessary in order to vest in the latter full and exclusive charge and control, under the direction of the court, of the property rights of the company. In this particular case such decree and such assignment were in fact made, and so, in any view that may be taken, the property rights of the corporation have in fact vested in Ward, the receiver and assignee.

The powers of the receiver specially designated in the statute do not seem to be essentially different from those mentioned in the Voluntary Assignment act as being given to the assignee under a voluntary assignment. In both acts the powers specified seem to be limited to the enforcement of property rights derived from the corporation or assignor, respectively.

Section 5 of the Dissolutions act defines the powers and property rights of the receivers. It says they are: "to take charge of the estate and effects of the company;" "to collect the debts due, and property belonging to it," the company; "to prosecute and defend suits in the name of the corporation, or in their own names;" "to do all acts necessary for the collection, marshaling and distributing of the assets of the company;" and "to do all acts necessary for the closing of its concerns." Section 6 defines the duties of the receiver in respect to paying out and distributing such moneys as may be in his hands, and also gives him power, when authorized by the court, to sell, convey and dispose of, and convert into money, any of the securities or assets of the company. The property rights donated him or given into his charge are, the estate and effects of the company, the debts due the company, and the property belonging to it. We have already seen that in this case there were no debts due the company from the stockholders here in question. To say, "the estate and effects of the company," means precisely the same thing as saying the estate and effects owned by the company. *Ohio and Mississippi Ry. Co.* v. *Barker,* 125 Ill. 303; *Montgomery* v. *Wyman,* 130 id. 17.

We do not find any words in said sections which afford any pretence for claiming that the powers of the receiver are so enlarged thereby as to include the right to impeach a transaction which the corporation could not challenge but which the creditors could arraign, unless such enlargement is accomplished by the use of the words, "the assets of the company," or follows, by necessary implication, from the power given

the receiver to marshal assets, or by like implication from the power donated "to do all acts necessary for the closing of the concerns" of the company. As now used, the expression, the assets of a person, corporation or estate, is generally equivalent to the expression, the property of such person, corporation or estate. From the connection in which the expression, "the assets of the company," is found in this statute, we think it has reference only to the estate, effects, securities, debts and property specified in said statute, and which are to be placed in charge of the receiver. There may be frequent occasion for the application by the receiver of the equitable doctrine of marshaling, without any such amplification, of the fund to be administered by him, as is contended for by the defendants in error, and so there is no sufficient justification for saying that such enlargement follows by necessary intendment. The expression "the concerns of the company," falls in the same category with the phrase, "the assets of the company." Although broad enough, in one sense, to include the enforcement of claims which the company could not enforce but which its creditors could, yet we think, from the context, that they were not intended to thus magnify the powers of the receiver. The expression may be given a signification which is both reasonable and usual, and is also consistent with the other parts of the statute, and with the functions of a receiver according to the course and practice of the court, without holding that there is any enlargement of the powers of the receiver beyond what is specified in the statute, and, therefore, it can not be held that an expansion in that behalf results by implication.

An administrator is merely the representative of his intestate. An assignee is not the representative of creditors, but is the agent of the assignor for the distribution of the property assigned. A receiver, *virtute officii*, and without regard to any expansion of his powers by statute or by an authorized decree of court, is only a custodian of property. He is ordinarily, in respect to his title and in respect to the litigations in which

he may engage, merely the representative of the owners of the property submitted to his control. But, so far as his powers are derived from a statute or from a lawful decree of court, and the powers do not involve rights which, at the time of his appointment, were vested in such owners, he is not merely their representative, but is the instrument of the law and the agent of the court which appointed him. Such right and authority as the law and the court rightfully give him he possesses, and in respect to such right he is not circumscribed and limited by the right which was vested in and available to the owners.

It is claimed by counsel for defendants in error, and the claim is supported by very able and learned arguments, that the legislature, in enacting the law here under consideration, invested the court of equity with jurisdiction and authority to make final settlement of the unfinished business of the corporation and close up its concerns, and that this authority, when supplemented by the powers inherent in the court of chancery, was amply sufficient to warrant the court in making the order which is here called in question, and in doing all other acts necessary for the accomplishment of the ultimate purposes contemplated by the act. But, as we have already seen, the ultimate purposes intended by the act are, to perpetually enjoin insurance companies which fall within its purview, from the further continuance of the business for which they were organized, and to enable the court, through its receivers, to administer upon the estate, effects, securities, property and assets owned by such companies, and upon the debts due them. The means by which these objects are to be accomplished are designated and fixed by the statute itself. The ninth section of the act provides : "The mode of summoning parties into court, the rules of practice, course of procedure and powers of courts, in cases arising under this act, shall be the same as in ordinary proceedings in equity in this State, except as herein otherwise provided." As we have already, in

12—135 ILL.

substance, remarked in another connection, it is not a power inherent in the court of chancery, and it is not in conformity with the course of procedure and rules of practice which obtain in ordinary proceedings in equity, for the court to clothe its receiver with power to seize and enforce a property right which belongs only to parties who are not before the court, and who are not asking its assistance.

Nor is it provided in the statute, nor legitimately deducible therefrom, as is the case in respect to the statutes in force in some jurisdictions, that the receiver may represent creditors, and bring suits to set aside acts of the persons or corporations whose property is in charge of the receivers, which were in fraud of such creditors. The legislature has made no provision of this kind, and in its absence it does not devolve upon the courts, by judicial legislation, to assume a jurisdiction that they have not heretofore possessed.

Our conclusion upon this branch of the case is, that the order made by the circuit court on January 31, 1878, authorizing and directing the receiver to institute proceedings against the subscribers to the stock and stockholders of plaintiff in error, was erroneous.

One of the assignments of error is, that the court erred in making each and every of the orders and decrees set forth in the record. It is claimed that an order made in January, 1878, directing the receiver to pay a "dividend of fifteen per cent of all accepted valuations made by him of policies, and certified by the actuary of the State Insurance Department, and of all other admitted liabilities of the said Republic Life Insurance Company," etc., was erroneous. The statute provides for the payment of dividends to "creditors who prove their debts," and it is claimed that this statutory requirement was disregarded in making said order. As we understand the record, no objection was made to this order upon the first submission of the case, nor until after the awarding of a rehearing. The receiver, acting in good faith upon this order, paid out

$93,568.99, and his report of such payments was confirmed by the court. There was no objection taken in the court below either to the order or to the report. The order was a final and appealable order, but no appeal was taken or writ of error sued out until after the entry of the final decree in the cause. We think that under the circumstances the objections now urged should not be considered by us. The order, without any examination by us, should be allowed to stand for the protection of the receiver.

The final decree perpetually enjoining the plaintiff in error from the further prosecution of its business is affirmed. The order and decree licensing the receiver to set aside the transactions by which unpaid stock was surrendered and paid up stock issued is reversed.

*Decree reversed in part and in part affirmed.*

Mr. JUSTICE SCHOLFIELD: I do not concur in the foregoing opinion. I think that the statute conferred ample power upon the circuit court to make the order in question. Although the corporation may be estopped to sue these subscribers for stock, the receiver is not, for he represents, as to the transaction whereby they claim to be protected from suit by the corporation, both the corporation and its creditors, and it is his duty to collect the amounts subscribed, for the benefit of the creditors. 2 Morawetz on Private Corp. sec. 867, and authorities cited; High on Receivers, sec. 315; *Curtiss* v. *Leavitt*, 15 N. Y. 44; *Sawyer* v. *Hoag*, 17 Wall. 619.

Mr. JUSTICE MAGRUDER: This is a controversy between creditors on the one side and stockholders on the other. Having acted as attorney for one of the creditors in the court below, I have taken no part in the decision of this case.