# Vrooman *v.* R. P. Vansant Lumber Company.

*Corporations—Capital stock—Subscription—Reduction of subscription—Meetings—Notice—Waiver—Act of April 29, 1874, P. L. 73.*

A corporation organized under the act of 1874, with a capital stock of $100,000 divided into shares of $100 each, all of which is subscribed at the time of the organization, and forty-five per cent of which has been paid, has a right four years after its organization when solvent and without existing creditors, to call in the 1,000 shares part paid stock, cancel the original subscriptions, and issue in lieu thereof 450 full paid shares, the remaining 550 shares to be held by the corporation for its use and future disposition.

The meeting for the reduction of such subscription need not be held in the manner provided by the statute for a reduction of the capital stock, inasmuch as a reduction of the subscriptions is an entirely different matter from the reduction of capital stock. If the meeting is attended by all of the stockholders, except one, and such stockholder subsequently surrenders his part paid stock, and accepts a less amount of full paid stock in exchange therefor, the validity of such meeting cannot be attacked by a creditor whose debt against the company was created several years after the meeting; nor in such a case can subsequent creditors of the corporation maintain actions against the shareholders individually for the corporate debts, merely because the corporation failed to file annual reports in the office of the recorder of deeds as required by clause 8 of section 39 of the act of April 29, 1874; and this is especially so where such creditors had actual notice of the reduction of the subscriptions.

Argued March 27, 1906. Appeal, No. 73, Jan. T., 1905, by Francis Shubert, from decree of C. P. No. 4, Phila. Co., Dec. Term, 1903, No. 3,026, on bill in equity in case of Samuel B. Vrooman and John C. Cottingham v. The R. P. Vansant Lumber Co. Before MITCHELL, C. J., FELL, POTTER, ELKIN and STEWART, JJ. Reversed.

Bill in equity for an injunction and receiver.

Exceptions to report of J. Burrwood Daly, Esq., auditor.

The opinion of the Supreme Court states the case.

The auditor charged Francis Shubert with the sum of $17,000 as the unpaid amount of his original subscription to the capital stock of the defendant company.

The court overruled exceptions to auditor's report.

*Error assigned* was in overruling exceptions to auditor's report.

*John G. Johnson*, with him *Avery D. Harrington*, for appellant.—A corporation has the right to purchase its own stock, where the transaction is not prohibited by statute and is made in good faith: 1 Weimer's Penna. Corp. Law, 236, sec. 188; Kimmel v. Stoner, 18 Pa. 155; Coleman v. Columbia Oil Co., 51 Pa. 74; Stevens's Appeal, 147 Pa. 422; Dock v. Schlichter Jute Cordage Co., 167 Pa. 370.

There is no Pennsylvania case which prevents a corporation by action of the board of directors, ratified by unanimous approval of stockholders, whilst it is solvent, from canceling a subscription to its shares. It might very well happen that it could obtain new subscriptions on much better terms being solvent.

*David. Wallerstein*, with him *Horace H. Francine* and *John Scott, Jr.*, for appellees.—The appellant was liable for his unpaid subscription: Braddock Electric Ry. Co. v. Bily, 11 Pa. Superior Ct. 144; Putnam v. Hutchison, 4 Kansas App. 273 (45 Pac. Repr. 931); Duplex Printing Press Co. v. Clipper Pub. Co., 213 Pa. 207; Paper Co. v. Waples, 3 Woods, 34; Guckert v. Hacke, 159 Pa. 303; Lexow v. Penna. Diamond Drill Co., 5 Pa. Dist. Rep. 499.

OPINION BY MR. JUSTICE ELKIN, April 30, 1906:

Had the defendant corporation organized in 1889 for manufacturing purposes under the act of 1874, with an authorized capital stock of $100,000, divided into 1,000 shares of the par value of $100 each, all subscribed, on which assessments, amounting to forty-five per centum had been called and paid, certificates to the full amount issued and outstanding, in 1893, four years after date of its incorporation, when authorized by resolution of the board of directors, acting under a by-law and ratified by all the stockholders, being solvent and without existing creditors, the right to call in the 1,000 shares part paid stock, cancel the original subscriptions, and issue in lieu thereof 450 full paid shares, the remaining 550 shares being held by

the corporation for its use and future disposition? If this thing was legally done, the decree must be reversed; if not, it must be affirmed.

On one side it is contended the corporation acted within its corporate powers in so doing, on the other, its right to do so is challenged. The right of appellant to participate in the distribution of the proceeds arising from the sale of the assets of the corporation which became insolvent ten years after the transaction hereinbefore mentioned, depends upon the answer to this question.

Prior to 1874 the law did not require the corporators to be subscribers to the stock. In Densmore Oil Co. v. Densmore, 64 Pa. 43, it was held that the corporators were mere instruments of the law for organization purposes, and need not be subscribers to the capital stock. The act of 1874 changed the rule and required the corporators to be subscribers, but it did not provide that all of the stock authorized to be issued should be subscribed in the first instance. It is necessary to specify in the certificate of incorporation the amount of capital stock authorized to be issued, but the uniform practice followed by the state departments, adopted by the profession and sanctioned by law, is to subscribe for the whole or such part of the capital stock, above the ten per centum required to be paid into the treasury, as shall be necessary for present corporate purposes. It is therefore clear that at the date of incorporation in 1889, the original corporators could have subscribed for 450 shares, thus leaving 550 shares to be issued by the corporation in the future. It seems to follow that if the corporation could have been so organized in the first instance, the same thing may be accomplished four years later, with the consent and by the direction of all interested parties, there being no existing creditors with rights to be affected thereby.

If the corporation had the right to do what was done in 1893, the only question to be considered is whether it was done in a legal manner. One of the by-laws provides that "an increase or decrease in the amount of subscription to the capital stock of the corporation may be made at such time and in such manner as the holder or holders of the majority in value of stock shall determine at a meeting held for that purpose, of which previous notice shall be given to each stockholder by mailing

the same to his last address at least ten days previous to the date of said meeting."

A meeting of the board of directors was held June 1, 1893, at which a resolution was adopted authorizing this thing to be done, and directing notice to be given the stockholders. Just when the meeting was held and how the notice, if any, was given does not clearly appear from the testimony. It is contended here that the meeting was not held and notice given as required by the by-law. We do not doubt that the stockholders in a matter of this kind can waive the notice. The act of 1874 authorizing the increase of the capital stock or indebtedness of a corporation provides that notice of the time, place and object of the meeting held for this purpose shall be published once a week for sixty days prior to such meeting. It has been uniformly held that this notice may be waived by the consent of all the stockholders.

In the case at bar it appears that all of the stockholders except one attended the meeting which authorized the decrease of the amount of the subscription, and that the one stockholder not present ratified the transaction by surrendering his original part paid stock, and accepting a less amount of full paid stock in exchange therefor. So far as the record shows, we must conclude there was a waiver of notice and a ratification by all the stockholders of the transaction. Cook on Corporations, 5th edition, 168, states the rule as follows : " It is legal for a corporation, by common consent, to issue to its stockholders full paid stock to the amount of cash actually paid in, on a large subscription, the first subscription being canceled, provided the arrangement is made before debts are incurred." While the exact question has not been raised in our courts, it has frequently been passed upon in other jurisdictions. In Republic Life Insurance Company v. Swigert, 135 Ill. 150, it was held that " the contracts were valid as between the company and the stockholders who gave up their part paid stock and received in lieu thereof full paid stock for one-fifth of the amount relinquished. The transaction was binding upon the company and the stockholders who sold their stock to the corporation, and who should be protected against further payments upon their subscriptions, unless there were at the time of the transaction existing creditors in respect to whose rights it was fraudulent."

We can see no reason why a solvent corporation as between itself and its stockholders cannot do this thing. A different question might arise if there were any existing creditors to complain. In the present case it was a change of form rather than of substance. The working capital of the corporation was $45,000 before and after the transaction referred to. Prior to the arrangement made in 1893 it was evidenced by 1,000 shares of part paid stock issued and outstanding, and after that date by 450 full paid shares issued and 550 shares not issued, which could be held by the corporation, or sold to new subscribers, or used in other proper ways for the benefit of the corporation.

It is argued, however, that the transaction amounted to a decrease of the capital stock, and is invalid because it was not done in the manner provided by law. This point would be well taken if the capital stock had actually been decreased. There can be no increase or decrease of the capital stock of a corporation except in the manner provided by statute. The answer to this position is, there was no decrease in the capital stock in this case. The authorized capital stock remained the same. The subscription was changed, not the amount of capital stock. The statute is silent on the subject of increasing or decreasing the subscription, and hence the rule invoked does not apply.

It is further contended that the failure of defendant corporation to file annual reports in the office of the recorder of deeds as required by clause 8 of section 39 of the act of April 29, 1874, gives the subsequent creditors the right to rely on the original certificate of incorporation. In other words, that since the corporation failed to give notice of the cancellation of the original subscription, the calling in of the part paid stock, and the issuance of full paid stock in exchange therefor, subsequent creditors without notice of these changed conditions cannot be affected thereby. If the corporation and the stockholders had the right to do what was done in 1893, and by that act appellant was released on his original subscription, it may be doubted whether the failure of the corporation as a legal entity to perform some act required of it by law at a subsequent date, can be seized upon to impose a liability on the appellant from which he had been released by the corporation and all other interested

parties at a prior date.   In this connection it may be observed that the filing of the annual report is a duty imposed upon the corporation and not upon the shareholders individually.   At most, the filing of the annual report in the office of the recorder of deeds is only for the purpose of giving notice to persons having dealings with the corporation.   If the creditor has obtained from any other source the information that he could have received by an examination of such report, he cannot be said to have been prejudiced by the failure of the corporation to perform that duty.   In the case at bar, the complaining creditor before giving credit to the corporation secured through commercial agencies a report which in substance showed its exact financial and corporate condition ; that the paid in capital was $45,000 ; that 450 full paid shares were issued and outstanding, and by necessary implication that the remaining 550 shares were not issued.   He therefore had all the material facts relating thereto that he could have secured by an examination of the annual report.   He sold lumber to the company in the summer of 1903, ten years after the liability of appellant on his original subscription had been extinguished, and the testimony does not show, nor tend to show, that he gave credit to the corporation on account of the original subscriptions.   It is clear that he dealt with the corporation on the conditions he found existing in 1903, and not because of the situation prior to 1893.

Decree reversed, and it is ordered that the record be remitted to the court below to have the distribution made in accordance with this opinion.