## MARION TRUST COMPANY, RECEIVER, *v.* BLISH.

[No. 21,281.    Filed May 26, 1908.    Rehearing denied July 2, 1908.]

1. CORPORATIONS.—*Capital Stock.—Insolvency.—Receivers.—Creditors.*—The capital stock of a corporation constitutes a fund for the transaction of business, as well as a trust fund for the benefit of creditors; and, in case of insolvency, money due for shares of capital stock are collectible by the receiver, who represents all of the creditors as well as the corporation.   p. 690.

2. PLEADING. — *Complaint. — Answer. — Corporations.—Stock Subscriptions.—Fraud.*—A complaint by the receiver of a private corporation to recover unpaid stock subscriptions is based upon, a corporate right and inures to creditors generally, and a special answer of the company's fraud in securing such subscriptions is not open to the objection that the rights of subsequent creditors have attached.   p. 690.

3. RECEIVERS.—*Actions.—Representatives of Whom.—Corporations. —Fraud.*—Receivers, as a rule, sue only in the rights of the corporations they represent, and defenses available against such corporations are available against such receivers, except that such receivers so far represent the rights of the general creditors that they may avoid transactions in fraud of such creditors' rights.   p. 690.

4. SAME.—*Stock Subscriptions.—Fraud.*—A receiver has no right to enforce stock subscriptions in favor of prior creditors of the insolvent corporation, where such subscriptions were induced by fraud.   p. 696.

5. SAME. — *Stock Subscriptions. — Creditors.—Classes.*—Receivers have power to enforce stock subscriptions only where they will inure to the creditors generally.   p. 696

6. PLEADING. — *Complaint. — Answer. — Reply.—Departure.—Stock Subscriptions.—Fraud.—Creditors.—Receivers.*—Where a receiver sued, for the benefit of creditors, upon a stock subscription, the answer being fraud, a reply that certain persons became credit-

ors in reliance upon such subscriptions is a departure, such receiver being unable to represent, in such action, a part only of the creditors of his insolvent corporation. pp. 697, 701.

7. CORPORATIONS.—*Creditors.—Classes of.—Receivers.—Rights of Action.—Intervening Petitions.*—Where different classes of creditors of an insolvent corporation have different or conflicting rights in the assets thereof, such classes may vindicate their rights in separate actions, or possibly by intervening petitions in the receivership. p. 699.

8. PLEADING.—*Answer.—Estoppel.*—An answer, in an action by a receiver to enforce an unpaid stock subscription, that certain creditors of the insolvent corporation extended credit "upon the faith of" defendant's stock subscription is insufficient, since it fails to show whether such creditors knew the facts, or blindly extended credit without investigation. p. 699.

9. APPEAL.—*Briefs.—Points.*—Where appellant fails to set out in its first brief the points to be determined in the case, it cannot on subsequent briefs raise such points. p. 699.

10. SAME.—*Transfer.—Objections.—When Made.—Rehearing.*—It is not a ground for a rehearing that the Supreme Court erroneously transferred the case from the Appellate Court. p. 700.

11. SAME.—*Transfer.—Causes.*—A case will be transferred from the Appellate Court, where a new question of law was erroneously decided, or where a ruling precedent was disregarded. p. 700.

12. SAME.—*Briefs.—Duty of Appellant.*—The appellant, being the moving party on appeal, must properly present all desired questions for consideration. p. 703.

From Jackson Circuit Court; *Thomas B. Buskirk,* Judge.

Action by the Marion Trust Company, as receiver of the Vernon Insurance & Trust Company, against Tipton S. Blish. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court under cl. 2, §1394 Burns 1908, Acts 1901, p. 565, §10. *Affirmed.*

*James W. Noel, Shea & Wood* and *Oscar L. Pond,* for appellant.

*Baker & Daniels,* for appellee.

GILLETT, C. J.—This was an action by the receiver of the Vernon Insurance & Trust Company, a corporation which had been engaged in the insurance business under a special charter from the State of Indiana, to enforce the collection

of a stock subscription note executed to said corporation by appellee. The latter answered, setting up false and fraudulent representations inducing the making of the contract. After unsuccessfully demurring to the latter paragraph, appellant filed a reply in the nature of a confession and avoidance. A counterclaim was also filed by appellee, which set up substantially the same facts as were alleged in his answer, to recover the amount of a partial payment on said note. Appellant filed an answer to the counterclaim, alleging facts not materially different from those set forth in its said reply. A demurrer was sustained to said reply and to appellant's said answer, and, as appellant refused to plead further, electing to abide its exceptions, judgment followed.

So far as necessary to refer to the complaint, it may be said that, in addition to alleging the appointment of a receiver, at the suit of the prosecuting attorney of Marion county, and the granting by the court of authority to sue, the pleading alleged: ''That said note is now in the possession of plaintiff as receiver of said Vernon Insurance & Trust Company, and is a part of the assets thereof; * * * that plaintiff is winding up the affairs of said Vernon Insurance & Trust Company under order of the court, and is administering the assets thereof for the benefit of the creditors of said corporation, and that the valid claims against said corporation are very much more than can be realized from said assets, and that if all of the stock subscriptions and stock notes and all of the other assets of said association can be converted into money, a large portion of the valid claims against said corporation will yet remain unpaid, and that said valid and unpaid claims against said corporation are long past due; * * * that, notwithstanding said note provides for the payment of the same in instalments, all of the same is now due for the benefit of creditors, and said creditors have no other assets to rely upon for the payment of their said claims.''

For reasons hereinafter stated, it is unnecessary to indicate

with greater particularity the nature of the special answer and the counterclaim, and we shall therefore proceed to make a brief statement of the contents of the reply. That pleading shows that the Vernon Insurance & Trust Company was engaged in insuring property against fire between the date of the execution of the note and the appointment of the receiver, during which time appellee was a holder of the stock for which the note was given; that during said time said corporation incurred liabilities on account of fire losses in the sum of $46,000, and, upon the appointment of the receiver there was entered an order of court to cancel the policies of said company, and it became liable for over $35,000, on account of unearned premiums written within said time, all of which constitute valid and enforceable claims against the corporation. The reply then alleges that said claims are unpaid and constitute a charge against the assets of the company, which are not sufficient to pay its debts; that the debts were contracted and the owners thereof became creditors of the company after the making, "and upon the faith of said stock subscription"; that the assets of said company are not sufficient to pay the claims aforesaid; that the defendant is still the owner and holder of the stock certificate; that the same has never been returned, and no demand has ever been made for the cancelation of the stock certificate or for the return of the stock note. The reply to the counterclaim is not substantially different from the reply to the answer.

Under the head of "points and authorities," appellant adduces but two general propositions, viz.: (1) "One who has subscribed to the capital stock of a corporation cannot escape payment of his subscription by pleading the fraud of the corporate officers or agents in securing the subscription, where the rights of creditors have attached. If others in the meantime have acted upon the faith of such subscription and the corporation has become insolvent, such fraud is no defense." (2) "The receiver in such case stands for the cred-

itors, and may enforce collection of the subscription for the benefit of the creditors which it represents, even though the corporation could not itself have enforced the subscription. In such case the doctrine of estoppel will not hinder the receiver, although it may have prevented the corporation from asserting the claim.''

The capital stock of a corporation is regarded, not alone as a fund for the transaction of corporate business, but also as a trust fund for the benefit of creditors. It is an

1.  essential part of this doctrine that money agreed to be paid into the treasury on account of shares is a part of the fund. 10 Cyc. Law and Proc., 653. Upon the insolvency of a corporation and the appointment of a receiver it is clear, in view of the fact that the capital stock constituted an asset of the corporation, and that the receiver represents all of the creditors, that he may be authorized to sue on account of unpaid stock subscriptions. *Big Creek Stone Co.* v. *Seward* (1886), 144 Ind. 205; *Gainey* v. *Gilson* (1897), 149 Ind. 58. We may assume, at least for present purposes, that the complaint herein stated a cause of

2.  action. It cannot, however, be treated as a complaint on behalf of any particular body of creditors. It counts on a right vested in the corporation, which would therefore inure to the creditors generally, and for that reason, we may also add, it appears to us that the special answer of fraud is not open to the objection that the rights of subsequent creditors have attached.

The essential question in the case arises upon the reply, wherein the receiver, in a sense at least, shifts his ground, and attempts to fortify his original cause of action by

3.  seeking to bring forward the rights of a certain class of creditors. If the receiver were by law authorized to, and could, consistently with his duty to the general creditors, represent this limited body of creditors, it might possibly be said that he was not bound to anticipate the defense of fraud when he filed his complaint, and that therefore the

reply did not involve a departure (*United States* v. *Morris* [1822], Fed. Cas. No. 15,816), but if it be that in filing such reply he attempts to invoke the equities of persons whose rights he in nowise represents, it is clear that the reply does not state facts in avoidance of the answer.

While it is true, as we have shown, that the receiver may collect the assets for the benefit of the general creditors, yet back of this and of all other considerations lies the question as to the nature or source of his title for the purposes of litigation, as distinguished from those of administration, assuming that he has been appointed in an ordinary receivership proceeding for the purpose of administering upon the estate of an insolvent corporation, which would be the most favorable assumption to appellant.

There can be no doubt of the proposition that it is the general rule that in the ordinary receivership which is extended over the affairs of an insolvent corporation, the receiver can only sue in the right of the corporation, and that he is subject to all of the equities which would have been available against it.    This rule is subject to the exception that the receiver so far represents the general creditors that he may avoid transactions in fraud of their rights.    "Since the appointment of a receiver *in limine* does not affect any questions of right involved in the action, and does not change any contract relations or rights of action existing between parties, it follows as a general rule that in ordinary actions brought by a receiver in his official capacity, to recover upon an obligation or demand due to the person or estate which has passed under the receiver's control, the defendant may avail himself of any matter of defense which he might have urged had the action been brought by the original party instead of by his receiver."    High, Receivers (3d ed.), §245. In a subsequent section of the same work the author says: "While the receiver of an insolvent corporation is thus treated as the representative of both creditors and shareholders, so far as any beneficial interest is concerned, yet, for the pur-

pose of determining the nature and extent of his title, he is regarded as representing only the corporate body itself, and not its creditors or shareholders, being vested by law with the estate of the corporation, and deriving his own title under and through it. For purposes of litigation, therefore, he takes only the rights of the corporation, such as could be asserted in its own name, and upon that basis only can he litigate for the benefit of either shareholders or creditors, except when acts have been done in fraud of the rights of the latter, but which are valid as against the corporation itself, in which case he holds adversely to the corporation.'' High, Receivers (3d ed.), §315. In Wait, Insolvent Corp., §235, it is said: ''Generally speaking, a receiver cannot compel payment of a subscription that the corporation could not have enforced at the time of his appointment.'' To the same effect is 3 Clark & Marshall, Corporations, §799a.

In the leading case of *Curtis* v. *Leavitt* (1857), 15 N. Y. 1, 44, it was said: ''The appellant, as receiver, has no interest in or power over the property affected by the trusts in question, except such as he derives under the statutes which have been mentioned. It has been said in this, as in other cases, that he represents the creditors and the stockholders, but for all the purposes of inquiry into his title he really represents the corporation. He is by law vested with the estate of the corporate body and takes his title under and through it. It is true, indeed, that he is declared to be a trustee for creditors and stockholders; but this only proves that they are the benficiaries of the funds in his hands, without indicating the source of his title or the extent of his powers. If, then, in a controversy between the receiver and third parties, in respect to the corporate estate, it is possible to form a conception of rights, legal or equitable, belonging to the shareholders as individuals, which the corporation itself could not assert in its own name, the receiver does not represent those rights. So far as stockholders are concerned, he can litigate respecting the fund upon precisely the

grounds which would be available to the corporation, if it were still in existence, solvent, and no receivership had been constituted. In regard to creditors, I should certainly incline to take the same view of his rights and powers under the statute referred to. It has, however, been uniformly assumed, and was not denied on the argument, that he succeeds to the rights of the creditors, and takes his title under them, where conveyances have been made in fraud of their rights, but otherwise valid. In such cases he holds adversely to the debtor corporation.''

In *Smith* v. *Johnson* (1898), 57 Ohio St. 468, 488, 49 N. E. 693, it was said: ''We suppose that the position of a receiver in this kind of an action does not admit of serious question. While, speaking in general terms, he is a trustee for creditors, and for stockholders as well, in respect to their interests in the property, and assets of the corporation, resting upon the fact that they are, or may be, the beneficiaries of the fund which he collects, yet he stands, in a suit against stockholders, as the representative of the corporation, taking the rights of the corporation such as could have been asserted in its name, and on that basis only can he litigate. Smith, Receiverships, §231. That is, he succeeds to the title and rights of action of the corporation itself, and takes all such rights as the corporation itself originally had, and may enforce them by the same legal remedies. 23 Am. and Eng. Ency. Law, 827; High, Receivers (3d ed.), §§315, 316; *Winters* v. *Armstrong* [1889], 37 Fed. 508; *Republic Life Ins. Co.* v. *Swigert* [1890], 135 Ill. 150, 25 N. E. 680, 12 L. R. A. 328. On the authority of *Curtis* v. *Leavitt* [1857], 15 N. Y. 1, 44, and of *Alexander* v. *Relfe* [1881], 74 Mo. 495, Mr. High maintains that where acts have been done in fraud of the rights of creditors, but which are valid against the corporation, he may hold adversely to the corporation, and possibly there is like power given a receiver by statute, but that is not of consequence in the present case.''

The limitation upon the title of a receiver, appointed un-

der the general powers of a court of equity, is considered at length upon the authorities in *Republic Life Ins. Co.* v. *Swigert, supra.* The conclusion was there reached that a receiver does not represent creditors. Upon this precise proposition the case appears to be out of line with other authorities, but it should be said in explanation of it that the court was dealing with a particularly narrow statute. Our reason for referring to the case is because of its clear discussion of the character of a receiver's title under general statutes.

Turning, now, to our own cases, it is first to be observed that in *Coffin* v. *Ransdell* (1887), 110 Ind. 417, where it was charged that property received by a corporation in full payment of a stock subscription had been taken at an overvaluation, it was held that while the contract stood unimpeached, the courts, even where the rights of creditors were involved, would treat that as payment which the parties had agreed should be payment. In *Wallace* v. *Milligan* (1887), 110 Ind. 498, in which a receiver had been appointed for a firm, the court held that he could only maintain such actions as the firm might have maintained, except where the firm had been guilty of fraud against its creditors. In *State, ex rel.,* v. *Sullivan* (1889), 120 Ind. 197, 198, it was held that it was incompetent for the court, appointing a receiver over an insolvent, to authorize the receiver to maintain an action on an official bond given by the insolvent, and on which a large number of its creditors had a right of action. In *Shepard* v. *Meridian Nat. Bank* (1898), 149 Ind. 532, the case of *Wallace* v. *Milligan, supra,* was followed. In *Bruner* v. *Brown* (1894), 139 Ind. 600, this court referred, with apparent approval, to some of our earlier cases as holding "that the receiver of a corporation is bound precisely as it is bound, and occupies the relation to the stockholders that the corporation itself, if waging the suit in its own person, would occupy. This is true, although the receiver represents the creditors as well as the stockholders." While it was stated in *Franklin Nat. Bank* v. *Whitehead* (1898), 149 Ind. 560, 39 L. R.

A. 725, 63 Am. St. 302, that the receiver of an insolvent corporation could maintain actions which the corporation could not, yet this statement was but the background of the specific holding that he so far represents the general creditors, that he may, on their behalf, avoid an assignment of notes secured by mortgage, because the mortgage was not recorded within the time required by law.    No question concerning the rights of particular creditors was involved in that case, and under the statute of frauds and perjuries the transaction was in reality a fraud upon the rights of creditors.    In *Gainey* v. *Gilson* (1897), 149 Ind. 58, which was a suit by a receiver to recover on unpaid stock subscriptions, the general rule as to the limitations upon the receiver's title for the purposes of litigation is stated thus:    ''Of course, in the collection of such subscriptions he is invested, in this respect, with no greater power than that which the corporation possessed, and is bound precisely in the same manner as it was.'' Citing 2 Beach, Priv. Corp., §§716, 717, 772; Beach, Receivers, §§669, 670; *Billings* v. *Robinson* (1884), 94 N. Y. 415; *Coffin* v. *Ransdell, supra; State, ex rel.,* v. *Sullivan, supra; Bruner* v. *Brown, supra; Runner* v. *Dwiggins* (1897), 147 Ind. 238, 36 L. R. A. 645.    It does not admit of question that the doctrine laid down in *Gainey* y. *Gilson, supra,* precisely meets the underlying question which is before us.

The numerous holdings, of which *Runner* v. *Dwiggins, supra,* is an instance, that a receiver cannot maintain an action under an additional liability statute, proceed upon the ground that it is a right in favor of creditors which does not pass to the receiver, and therefore this line of cases furnishes an analogy which aids in the determination of the question in hand.    We held in *Ellison* v. *Ganiard* (1906), 167 Ind. 471, that the personal rights of certain creditors to avoid a conveyance by the insolvent, resting on grounds of estoppel, did not empower a trustee in bankruptcy to avoid a conveyance which was valid as to the general creditors.    It is true that the rights of trustees in bankruptcy are limited by the

federal statute, but we find it held in England that, apart from considerations of statute, the plain equity of a party will be protected as against an assignor in bankruptcy. *Taylor* v. *Wheeler* (1706), 2 Vern. *565.

In *Audenried* v. *Betteley* (1862), 5 Allen 382, 81 Am. Dec. 755, which arose under an assignment law, Hoar, J., speaking for the court, said: "The effect of an estoppel which existed as to rights of property between the debtor and third persons would pass to an assignee; but we do not think the insolvent law intended to pass rights by estoppel between the creditor and third persons. Each creditor who was actually defrauded may still have his action against the plaintiffs. But this right of action, which is special and individual, is not transferred to the assignee of the debtor in insolvency; and the right to treat the property which was fraudulently represented as the property of the debtor as if it were really his property, seems to us equally the personal right of the creditor who was defrauded, and not transferable by the assignment for the benefit of creditors generally."

There can be no doubt, we think, that our general statute concerning receiverships must be construed in the light of the settled doctrine of courts of equity respecting the 4. powers of receivers; and, in the light of principle, our holding could not be otherwise as against a representative of those creditors who extended credit to the corporation prior to the making of the subscription contract, for what right have they to exact the performance of the contract as against one who, by fraud and deceit, was entrapped into the making of the agreement? This brings us to the further proposition that, in the effort to collect a stock 5. subscription, the receiver must represent the entire body of creditors. *American Trust, etc., Bank* v. *McGettigan* (1899), 152 Ind. 582, 71 Am. St. 345. Moreover, it is his duty to be indifferent as between the various sets of creditors, and the court ought not, had it the power, to au-

thorize him to maintain an action in which the grant-
6. ing of the relief sought would "place the creditors
having an equity in a worse condition, and the cred-
itors having no equity in a better condition, than they occu-
pied before his appointment." *American Trust, etc., Bank*
v. *McGettigan, supra.* In this case the complaint makes no
reference to any particular class of creditors, but states that
the note is a part of the assets of the corporation, and there-
fore the action must be assumed to be for the benefit of all
creditors, and yet the reply attempts to shift the ground of
recovery to the rights of a particular class. To which of
these classes, we may ask, would the benefit of a recovery
have inured? If the evidence justified a recovery on either
theory, should it be assumed that the general creditors re-
covered under the complaint, or, because of the special reply,
should the intendment be that the creditors therein referred
to were successful? It is also to be observed that, since it
was the duty of the receiver to maintain the rights of the
creditors as a whole, as he attempted to do by his complaint,
it would have been incompetent for even the court itself to
impose upon him the further duty of attempting, under the
issue tendered by his special paragraph of reply, to recover
for the limited class, since he could not serve two bodies of
creditors whose interests were in conflict. Should the re-
ceiver, it may be asked, under such issues as were attempted
to be framed in this case, attempt to recover on behalf of all
of the creditors, by the offering of evidence to show that
there was no fraud in the making of the contract, or should
he tacitly admit the existence of the fraud, as an essential
element in the recovery by a class of creditors whose claims
were founded, not upon the corporation's title, but upon its
ostensible proprietorship of the contract as a part of its
corporate assets? In the light of the suggested inquiries, it
appears to us that the introductory remarks of Comstock, J.,
in *Curtis* v. *Leavitt* (1857), 15 N. Y. 1, 42, although they re-

ferred to the facts of that particular case, are in reality quite apropos. He said: "It will be convenient to approach the questions in this case, having first an accurate notion of the rights and powers of the appellant as receiver of the North American Trust & Banking Company. His counsel have been understood to argue, in effect, that all possible objections to the million and first half million trusts are centered in him, constituting in the sum total a simple power to repudiate them, if repudiation were possible at any time, under any circumstances, and for the benefit of any parties—a power to be exercised without regard to the elements of which it is composed, and without inquiry whether the parties who will receive the fruits of its exercise could, in their own peculiar right, assert the particular objection which may be held fatal to those trusts. It is claimed that the receiver represents both creditors and stockholders, and so all objections derived from either and both of these sources are put together and urged with united force, although it may happen that one of these classes will take the entire benefit of objections which only the other class can make. Views of this sort are perhaps slightly encouraged by a generality of expression, in adjudged cases, which did not, in their circumstances, call for precision and accuracy."

Counsel for appellant have cited a number of cases from other jurisdictions in which receivers have maintained actions upon stock subscriptions where the rights of subsequent creditors were involved, but nearly all of them are cases in which the court merely assumed that the receiver represented such creditors. Indeed, we may say concerning the authorities, that if there is any case which, upon discussion, draws in question the doctrines we have announced concerning the limitations upon the authority of a receiver, it has escaped our attention.

If there are rights in a class of creditors which the receiver cannot represent, it must, perforce, follow that such

rights remain in them, and assuming that they have
7.   special equitable rights in the stock subscription, and
that the other creditors are without right, we do not
question the authority of the former to vindicate such rights
in a single action, possibly by way of intervening petition
in the receivership (*Toner* v. *Fulkerson* [1890], 125 Ind. 224;
*Shepard* v. *Meridian Nat. Bank* [1897], 149 Ind. 20; *Gainey*
v. *Gilson* [1897], 149 Ind. 58); but, as we have indicated,
the demurrer was properly sustained to appellant's reply,
because it did not represent such special equities.

Relative to appellant's answer to the counterclaim, it may
be, since there was an attempt by the counterclaim to secure
a judgment of allowance against assets in the receiv-
8.   er's hands, that the latter might defend such an ac-
tion on behalf of subsequent creditors. The showing
in such answer was not, however, sufficient to present the
question. The allegation as to the circumstances in which
such persons extended credit to the corporation is that they
did so "upon the faith of such subscription." Whether the
doctrine as to the rights of subsequent creditors rests upon
the principle of an ordinary estoppel *in pais,* or upon the
doctrine that as between innocent persons the one who was
negligent must bear the burden of the mistake, it neverthe-
less follows that the averment stated was not sufficient. We
cannot infer therefrom that such creditors did not have
knowledge, actual or constructive, of the facts; and if, with
such knowledge, they nevertheless blindly saw fit to extend
credit, they certainly have no equity as against one who was
himself the victim of an imposition.

The further question has been suggested by counsel for
appellant, in the course of their argument, as to whether
the special answer and counterclaim ought not to be
9.   held bad, as not making a sufficient showing relative
to appellee's repudiation of the contract; and it is
also argued that under their reply appellant was entitled
to a trial on the question of rescission. The rule of this

court, relative to the preparation of briefs, distinctly provides that ''no alleged error or point, not contained in its statement of points shall be raised afterward, either by reply brief or in oral or printed argument, or on petition for rehearing.'' We have been at the pains to set out appellant's points, and thereunder it appears to us that no question is raised except as to the right of the receiver to represent creditors; and as to whether a stockholder can in any case successfully plead fraud as against those who have acted upon the faith of the subscription. In other words, as respects the latter point, the question raised is as to the right to plead fraud at all as against creditors who became such in reliance upon and while the defendant occupied the status of a stockholder, and not the sufficiency in other respects of the pleadings whereby the fraud is asserted.

There is no available error, and the judgment should therefore be affirmed. It is so ordered.

Montgomery, J., did not participate.

## ON PETITION FOR REHEARING.

Per Curiam.—It is not ground for a rehearing that this court erroneously took jurisdiction by transfer of a case decided by the Appellate Court. *Kraus* v. *Lehman* (1908), *ante*, 408. We may say, however, that we did not order a transfer on the ground that the Appellate Court disregarded its rules in respect to the filing of briefs. We ordered a transfer, for the reason that the decision of the Appellate Court directly involved a new question of law which was decided erroneously, and, we may also add, that said decision in principle contravened *Gainey* v. *Gilson* (1897), 149 Ind. 58, *American Trust, etc., Bank* v. *McGettigan* (1899), 152 Ind. 582, 71 Am. St. 345, *Ellison* v. *Ganiard* (1906), 167 Ind. 471, and perhaps other cases of this court.

Appellant's counsel assert as ground for a rehearing that this court has misconstrued and misstated the record. This,

we take it, from the subsequent argument, is based on
6.    the fact that we asserted that in the reply appellant
      had shifted its ground.    That the complaint was
based on the right of the corporation, or, in other words, was
on behalf of all who might be creditors thereof, is apparent
from the portions of the complaint set forth in the opinion.
It may be true that the reply does not state that there were
different classes of creditors, but it does not deny the fraud
alleged in the answer, and relies upon the fact that there
are creditors of the corporation who became such after the
making of the subscription, and upon the strength thereof.
This is a shifting of ground.    If there had been a recovery
under the complaint, the money thus recovered would have
gone to augment the dividend of any possible creditor of the
corporation who had a general claim against it, whether
his claim had been filed when this suit was commenced or
not, while if there had been a recovery under the reply, the
money so received would not have been an asset of the
corporation, but would have belonged to particular cred-
itors, on the theory that as between them and the defend-
ant he was estopped to deny the validity of his subscrip-
tion.

There certainly must be some distinction between prior
and subsequent creditors in such a case as this.    It will not
do to assert that, because of the existence of one or many
of the latter class of creditors, the whole subscription must
be paid in, with the result that prior creditors who were not
misled would share therein in the making of the distribu-
tion.    Such a holding would be in utter disregard of the
principles of estoppel and of justice as respects such cred-
itors.

The receiver cannot represent subsequent creditors on
ground of estoppel, for their interests and his are opposed
to each other.    His claim must be founded on the theory
that the subscription belonged to the corporation, and there-
fore is a part of the general assets; theirs must rest on

the ground that, to the extent necessary to produce assets to pay their claims, they have an equity that authorizes them to insist that the defendant, having been silent, shall not be heard to speak; and their equity is such that it would be incompetent to deprive them of any part of the money thus produced, if necessary to pay their debts, by requiring them to divide with creditors who have no equity. It is a mistake to assume that we rest our decision upon *Republic Life Ins. Co.* v. *Swigert* (1890), 135 Ill. 150, 25 N. E. 680, 12 L. R. A. 328, since the cases before cited in this opinion, as well as *Curtis* v. *Leavitt* (1857), 15 N. Y. 1, and High, Receivers (3d ed.), §§315, 316, contribute almost equally to the result.

We did not hold generally that a receiver cannot represent different classes of creditors or claims. What we did hold was that, in an action on a stock subscription, the receiver must base his right on the title of the corporation, and that it is incompetent for a court in such a case to charge him with the further duty of representing creditors whose rights are personal and antagonistic to his.

In the remedy suggested in the principal opinion we perceive none of the serious difficulties which appellant's counsel apprehend; on the other hand, to permit a recovery by the receiver, by permitting him to assert any and all equities which certain creditors may possess, is to assert that the equity of the defendant is to be disregarded in favor of some who have no equity, and that creditors who have superior equities may be compelled to prorate with creditors who have no standing to complain, since, if the receiver recovers, the fund arising from the litigation will pass into his hands with equities that are undistinguished and undistinguishable. The only true view in such a case as this is that the receiver is the adversary of those who seek to avail themselves of subscriptions on the sole ground of the corporation's ostensible proprietorship of such subscriptions, without claiming that it was in law the owner thereof. The

rule we lay down does not depend upon the accidental circumstance as to whether there is more than one class of creditors in the particular case. It is the general principle, stated by Judge High, which we assert, that for the purposes of litigation the receiver, except as to transactions by the corporation in fraud of creditors, takes only the title of the corporation. High, Receivers (3d ed.), §315.

As to questions not decided by the principal opinion, it must be remembered that appellant is the moving party, and, if it would secure a reversal, it must comply with the court's rules. *Kraus* v. *Lehman, supra; Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438. This it did not do. The rule invoked by counsel is applicable to appellee, and is not available to the moving party, except in rare cases where some reason which is superior to the right of the individual litigant demands that there should be a reversal. *Kraus* v. *Lehman, supra; Scott* v. *City of Laporte* (1904), 162 Ind. 34.

We have carefully considered all questions raised in the petition for rehearing, and perceive no ground for granting the same.

The petition is overruled. All concur, except Montgomery, J., not participating.