## REEL, RECEIVER v. BRAMMER ET AL.

[No. 7,853. Filed May 27, 1913. Rehearing denied February 27, 1914. Transfer denied April 29, 1914.]

1. CORPORATIONS.—Sale of Capital Stock.—Statutes.—Fraud.— Under §5089 Burns 1914, §3859 R. S. 1881, providing that the capital stock of a corporation organized under the manufacturing and mining act shall be paid into the treasury within eighteen months, considered with §§4069, 4070 Burns 1914, Acts 1891 p. 335, §3020 R. S. 1881, providing that any corporation may sell, dispose or negotiate its bonds, notes or stock for such prices as will best advance its interests, etc., where a corporation organized under the manufacturing and mining act sells its capital stock at the best price obtainable therefor, it cannot be charged with fraud as against subsequent creditors for failure to require the par value of its capital stock to be paid into the company's treasury within eighteen months. p. 186.

2. CORPORATIONS.—Capital Stock.—Payment.—Rights of Creditors. —Creditors of a corporation organized under the manufacturing and mining act, having actual or constructive notice that the stock was sold to the stockholders at less than par, do not extend credit on the faith of the capital stock being paid in full, and can recover no more from the stockholders than the amount agreed to be paid. p. 186.

3. RECEIVERS.—Purpose of Appointment.—The primary purpose in the appointment of a receiver is to do the things which the creditors can not do for themselves. p. 187.

4. CORPORATIONS. — Insolvency. — Authority of Receivers. — The receiver of an insolvent corporation is authorized to take possession of all its assets, and may bring any action which it might have brought, but he can assert no rights that it could not have asserted at the time of his appointment. p. 187.

Reel *v.* Brammer—56 Ind. App. 180.

5. CORPORATIONS. — *Capital Stock.* — *Liability of Stockholders.* — *Receivers.*—A right of action exists in favor of a corporation against a stockholder who fails to pay his stock subscription, and, on insolvency of the corporation, such right passes to the receiver; but where stock was issued to the stockholders by the corporation for less than par, pursuant to an agreement that it was to be taken and held as fully paid and nonassessable, a receiver thereafter appointed, could not, in the absence of fraud on the part of the corporation, maintain an action against such stockholders to recover any amount in excess of the agreed price. p. 187.

6. CORPORATIONS.—*Capital Stock.—Payment.—Rights of Creditors.* —Where creditors of a corporation extended credit with knowledge that the stock was purchased at less than par and issued as fully paid and nonassessable, such stockholders were under no obligation to inform such creditors of the terms on which the stock was purchased, and such creditors had no equitable right to collect from such stockholders a greater sum than the corporation itself could have claimed as a part of its assets. p. 188.

7. CORPORATIONS.—*Capital Stock.—Payment.—Rights of Creditors.* —Where credit is extended to a corporation on the faith that its full capital stock has been paid in, when in fact its stock was sold at less than par, an action by a receiver of the corporation against the stockholders can not be maintained on behalf of the creditors, but recovery, if any, must be in a direct action by such creditors against the stockholders, on the theory that such stockholders are estopped to deny their liability. p. 189.

From Randolph Circuit Court; *J. S. Engle,* Judge.

Action by Wiley G. Reel, as receiver of The Dandy Oil Company, against Robert F. Brammer and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*Walter L. Ball, Albert E. Needham, Walter Baird, Mc Clellan & Hensel* and *Koons & Koons,* for appellant.

*William H. Thompson, Thompson & Sprague* and *White & Haymond,* for appellees.

ADAMS, C. J.—By this action appellant sought to recover from appellees severally a part of the difference between the price paid for stock held by each appellee in The Dandy Oil Company and the par value of such stock, sufficient to pay the liabilities of the corporation, after exhausting its tangible assets. The court on request made a special find-

ing of facts, and stated conclusions of law thereon. Judgment was rendered on the conclusions of law, that appellant take nothing by his action, and that appellees recover their costs.

Numerous questions are presented and argued by appellant, but the important and controlling question clearly arises on appellant's exception to the conclusions of law stated by the court on the facts specially found. The facts are found in great detail, including more than 100 special findings of fact, covering many pages of the record, but we think a summary of such findings will suffice for the purposes of this appeal.

It is found that on or about March 26, 1904, appellee Brammer purchased two gas and oil leases in Delaware County, Indiana, the seller agreeing to transfer the same to Brammer or to any other persons designated by him. Through an agent employed by Brammer, a number of persons were procured, who agreed to organize a corporation to explore for oil and gas, and to advance the sum of $3,000, for the purchase of the Brammer leases. It was agreed that when the leases were purchased, the same were to be transferred to the corporation in consideration of a part of its capital stock, and that the persons so advancing money should receive stock in the corporation in proportion to the amount of money advanced by each. On April 14, 1904, the persons designated one Walter L. Davis as trustee, and directed the leases to be transferred to him as trustee for the incorporators. Brammer was paid $3,000 for the leases, less $380, which he had agreed to take in stock of the corporation. No provision was made in the articles of incorporation in regard to the price at which the capital stock should be sold, nor the amount that would constitute the stock as fully paid. None of the defendants at any time signed any paper or writing subscribing for any shares of the capital stock, by which they promised to pay any sum or price for the stock, and none of the defendants at any time promised

to pay the corporation more than 14 2/7 cents per share
for the stock so purchased. At the organization meeting on
April 14, 1904, a resolution was adopted providing that the
capital stock of the corporation should be $42,000, divided
into shares of one dollar each, and that the promoters or
persons then owning the leases would take 21,000 shares of
stock in full payment for the same. On April 26, 1904, the
leases were transferred to The Dandy Oil Company, but
the corporation never paid the incorporators anything of
value for the leases, except the transfer to them of 21,000
shares of its capital stock, as provided by the resolution.
After the organization was fully completed, but before the
issuance of stock to the promoters, at a regular meeting of
the stockholders and directors, the minutes of the meeting
of April 14 were read and approved, and thereafter the
21,000 shares of capital stock were issued to the persons who
had transferred the leases to the corporation, each of whom
received a number of shares in proportion to the amount
contributed, to the purchase of the leases, on the basis of
175 shares of stock for each $25 advanced. Prior to June
14, 1904, the corporation had offered its stock for sale at
various prices, but had only sold eighty shares at fifty cents
per share, and being in danger of losing one of its leases
unless it could procure money to commence drilling at once,
at a called meeting of the stockholders a resolution was
adopted authorizing the sale of an additional 17,000 shares
of stock at the rate of 175 shares for $25 or 14 2/7 cents
per share. The court further found that all the stock sold
by the corporation was sold under and pursuant to these
resolutions, and that all of the stock was sold as fully paid
and nonassessable, which stipulation was written into the
face of the certificates of stock issued. At the time the stock
was sold, it had no market value greater than that at which
it was sold.

One of the leases taken over provided that the same should
be null and void unless a well should be commenced thereon

by July 15, 1904, or the holder of the lease should pay $2 per acre annually, neither of which the corporation was able to do without selling its capital stock. After procuring sufficient money from the sale of its stock at 14 2/7 cents per share, a well was drilled on one of the leases, which produced oil in large quantities. Thereafter the corporation never tried to sell any further amount of its capital stock, but continued to drill more wells which produced oil, and continued to purchase machinery and equipment for its use in the business. The company sold large quantities of oil from its wells, but not sufficient to pay the expenses incident to the drilling and equipping of additional wells on its leases. About October 21, 1904, the corporation borrowed from appellee, James L. Jones, $1,000, and executed its promissory notes therefor. At that time Jones was a stockholder and director of the corporation, and was one of the original organizers of the same. He owned an interest in the original leases, and had knowledge of the amount for which the stock had been sold, and that it had all been sold below par as fully paid and nonassessable. The company continued its operations and became indebted to numerous persons besides Jones, and on December 31, 1904, the corporation entered into an agreement with James L. Jones, Lansing M. Koons, David H. Corbett and Thomas M. Kirby, by the terms of which the parties were to procure and loan to the corporation a sufficient sum of money to pay all of its indebtedness, including its indebtedness to Jones, and to advance such additional sums of money as the corporation should require, up to the amount of $5,000, for which loan the company was to execute its promissory notes to the parties for the sum of $5,000, and to secure the payment of the notes by mortgage on all of the company's leases and property of every kind and character. This money was procured and turned over to the corporation, which it received and deposited in bank in its own name and used in the payment of its debts and in the prosecution of its business. At the

time of the execution of the note and mortgage, each of the mortgagees was a stockholder and director in the corporation, and each had purchased his stock at 14 2/7 cents per share as fully paid and nonassessable, and each, at the time of making the mortgage, knew that all of the stock of the corporation had either been used in the purchase of the company's leases, or had been sold in the open market at 14 2/7 cents per share, as fully paid and nonassessable stock. The mortgagees later brought suit for the foreclosure of their mortgage, and, on the ground of the insolvency of the corporation, had plaintiff appointed receiver therefor. The receiver took charge of all the property of the corporation, including its leases, sold the same, and applied the proceeds to the payment of the corporation's debts. The property of the corporation not selling for a sum sufficient to pay all of its debts, the receiver procured an order of court directing him to bring suit against all the stockholders of the corporation to compel the payment by them of such part of difference between the amount actually paid for the stock and the par value thereof, as would produce sufficient funds to pay all the indebtedness of the corporation. The court further found that after applying the amount received from the sale of the corporation property to the payment of preferred claims, there remained unpaid the sum of $8,302.62; that of the total indebtedness, the sum of $7,083.28 represented claims of persons who advanced money and extended credit to the corporation with full knowledge of the manner in which the stock was sold, and that it was sold below par as fully paid and nonassessable. It was also found that the receiver had in his hands the sum of $1,792, for the payment of costs and expenses, and for distribution to creditors; that this amount was paid voluntarily by stockholders, in compliance with the order of the court making an assessment of fifty-five cents against each share of stock outstanding.

The Dandy Oil Company was incorporated under the act

authorizing the incorporation of manufacturing and mining companies, which by §5089 Burns 1914, §3859 R. S. 1881, provides that the capital stock, as fixed by the company shall be paid into the treasury thereof within eighteen months.    Sections 4069, 4070 Burns 1914, Acts 1891 p. 335, §3020 R. S. 1881, are a part of the general corporation act, and provide that any company organized under the laws of this State may, by its president or other officers, sell, dispose or negotiate its bonds, notes or stock at such time and place, either within or without the State, and at such rates and for such prices as, in the opinion of the company, will best advance its interests; that if such bonds, notes or stock are sold at a discount, such sale shall be as valid and binding in every respect as if sold for par value. Considering the foregoing sections together, it is clear that where a corporation, organized under the manufacturing and mining act, sells its capital stock at the best price obtainable therefor, such corporation can not be charged with fraud as against subsequent creditors for failure to require the par value of its capital stock to be paid into the company's treasury within eighteen months.    In *Brent v. Underdown* (1901), 156 Ind. 516, 60 N. E. 307, the court held that where a corporation, organized under the manufacturing and mining act, provided in its articles that only fifteen per cent of the par value of its stock was to be paid therefor, the corporation could not require payment of a greater amount, and as the articles of incorporation were recorded, creditors occupy no stronger position than the corporation itself.    Creditors, having been fully advised by the public records, did not extend credit on the faith of the capital stock being paid in full, and can recover no more from stockholders than the amount paid.    Taking this as a correct expression of the law, it must follow that if creditors are bound by constructive notice of the amount paid, they are *a fortiori* bound by actual notice.

This action, it will be noted, was brought by a receiver,

and it is insisted by appellees that the findings disclose a proceeding which could not in any event be maintained by appellant. We think it may be stated generally that the primary purpose in the appointment of a receiver is not to do for creditors the things which they may do for themselves, but to do the things which creditors cannot do. The rule is well settled that a receiver of an insolvent corporation is authorized to take possession of all the assets of such insolvent, and may bring any action which the corporation itself might have brought against stockholders or other debtors. If a stockholder has not paid for the stock subscribed by him, a right of action exists in favor of the corporation, and in case of the insolvency of the corporation and the appointment of a receiver, such right of action passes to the receiver. But a receiver, for purposes of litigation, can assert only such rights as the corporation might have asserted at the time of his appointment. *Marion Trust Co.* v. *Blish* (1908), 170 Ind. 686, 84 N. E. 814, 85 N. E. 344, 18 L. R. A. (N. S.) 347; *Gainey* v. *Gilson* (1897), 149 Ind. 58, 48 N. E. 633; *Big Creek Stone Co.* v. *Seward* (1896), 144 Ind. 205, 42 N. E. 464, 43 N. E. 5; *Wallace* v. *Milligan* (1887), 110 Ind. 498, 11 N. E. 599; High, Receivers (3d ed.) §315; 3 Clark & Marshall, Priv. Corp. §899a; *Wheeler* v. *Thayer* (1889), 121 Ind. 64, 22 N. E. 972; *Haskell* v. *Gardner* (1910), 50 Ind. App. 1, 93 N. E. 458. The findings show that appellees did not subscribe for any part of the stock held by them in The Dandy Oil Company, but the stock was issued to them by the corporation at a valuation of 14 2/7 cents per share, in consideration of the transfer of certain oil leases to it, or was purchased by appellees from the corporation at 14 2/7 cents per share, pursuant to an agreement that the stock was to be taken and held as fully paid and nonassessable. This being true, the corporation could not have maintained an action in its own name to recover from appellees any amount in excess of the agreed

price, and, as there was no finding of fraud on the part of the corporation, the receiver was not invested with a right of action which could not have been asserted by the corporation itself. *Bruner* v. *Brown* (1894), 139 Ind. 600, 38 N. E. 318; *Gainey* v. *Gilson, supra;* 4 Thompson, Corporations (2d ed.) §4936; 2 Clark & Marshall, Priv. Corp. §389; Cook, Stockholders (2d ed.) §38; *Scovill* v. *Thayer* (1881), 105 U. S. 143, 26 L. Ed. 968. In the last case cited, the court, at page 153, said: "The stock held by the defendant was evidenced by certificates of full-paid shares. It is conceded to have been the contract between him and the company that he should never be called upon to pay any further assessments upon it. The same contract was made with all the other shareholders, and the fact was known to all. As between them, and the company this was a perfectly valid agreement. It was not forbidden by the charter or by any law or public policy, and as between the company and the stockholders was just as binding as if it had been expressly authorized by the charter."

Again, the findings show that creditors holding claims aggregating more than $7,000 dollars, extended credit to the corporation with knowledge that appellees purchased their stock at 14 2/7 cents per share, and that the stock was issued to them as fully paid and nonassessable. Such creditors, with knowledge of the agreement between the corporation and the shareholders, must have extended credit on the strength of the corporation, its business, prospects and tangible property. They were not induced to give credit to the corporation by reason of a liability against the shareholders which they knew did not exist, and the shareholders were under no obligation to inform such creditors of the nature and terms of their agreement with the corporation when the facts were equally well known to all. Under such circumstances, creditors have no equitable right to collect a greater sum from the stockhold-

ers than the corporation itself could claim as a part of its assets.   *Brent* v. *Underdown, supra; Bruner* v. *Brown, supra.*

While it is not found directly that other creditors occupy a different position, we may assume that such other creditors gave credit to the corporation on the faith of the full capital stock being paid in.   In that event, such creditors could only recover, if at all, in a direct action against the stockholders, on the theory that such stockholders were estopped to deny their liability.   In such case the right of action would be one flowing directly from stockholders to creditors, and could not be maintained by a receiver.   *Marion Trust Co.* v. *Blish, supra; Runner* v. *Dwiggins* (1897), 147 Ind. 238, 46 N. E. 580, 36 L. R. A. 645; *Gainey* v. *Gilson, supra;* 2 Clark & Marshall, Priv. Corp. §401j; *First Nat. Bank* v. *Gustin, etc., Min. Co.* (1890), 42 Minn. 327, 44 N. W. 198, 6 L. R. A. 676, 18 Am. St. 510.   In *Marion Trust Co.* v. *Blish, supra,* the court on page 701 said: "The receiver cannot represent subsequent creditors on the ground of estoppel, for their interest and his are opposed to each other.   His claim must be founded on the theory that the subscription belonged to the corporation, and therefore is a part of the general assets; theirs must rest on the ground that, to the extent necessary to produce assets to pay their claims, they have an equity that authorizes them to insist that the defendant, having been silent, shall not be heard to speak; and their equity is such that it would be incompetent to deprive them of any part of the money thus produced, if necessary to pay their debts, by requiring them to divide with creditors who have no equity."

Many other questions are presented and argued in appellant's brief, but we think no good purpose would be served by the consideration of such questions in this opinion.   It is manifest from the finding of facts that the case is one which a receiver could not maintain, and, therefore, the

court did not err in stating as its conclusion of law that appellant take nothing by his action. The judgment is affirmed.

NOTE.—Reported in 101 N. E. 1043. See, also, under (1) 36 Cyc. 1146; (2, 5, 6) 10 Cyc. 469; (3) 34 Cyc. 17; (4) 34 Cyc. 242, 256, 388; (7) 34 Cyc. 388.