## DAVIS v. ROACH, RECEIVER, ETC.

[No. 12,319. Filed June 26, 1925.]

1. RECEIVERS.—*Powers of receiver stated.*—The powers of a receiver are generally to seize and hold and to take charge of all property in the hands of the insolvent, to recover such property as has been illegally transferred by him in fraud of his creditors, and to collect all claims existing in favor of the insolvent. p. 323.

2. RECEIVERS.—*In this state, rules governing receivers are of equitable origin.*—Rules governing the rights of receivers, other than those which are statutory, are of equitable origin. p. 325.

3. RECEIVERS.—*Receiver cannot maintain action in which granting of relief sought would place creditor having equity in worse condition or creditor having no equity in better condition.*—A receiver cannot maintain an action in which the granting of the relief sought would place a creditor having an equity in a worse condition, and a creditor having no equity in a better condition, than he occupied before the appointment of the receiver. p. 325.

4. RECEIVERS.—*Receiver of insolvent not entitled to maintain action against third party on theory that he had fraudulently procured extension of credit to insolvent by certain creditors named in the complaint when there are other creditors.*—A receiver of an insolvent cannot maintain an action against a third party charged with having fraudulently procured extension of credit to the insolvent by certain creditors for whose benefit suit is brought when there were other creditors of insolvent who were making no claim of fraud against the defendant, since the granting of the relief sought would place

the latter in a better position than they occupied before the receiver's appointment.  p. 325.

5.  RECEIVERS.—*Complaint proceeding on erroneous theory as to receiver's right to maintain the action cannot be amended so as to make same good.*—Where complaint by receiver proceeded on an erroneous theory as to receiver's right to maintain the action, it could not be amended so as to make the same good, and must be dismissed.  p. 327.

From Marion Circuit Court (34,076) ; *Harry O. Chamberlain*, Judge.

Action by Joseph R. Roach, as receiver, against David Davis.   From judgment for plaintiff, the defendant appeals.   *Reversed.*   By the court in banc.

*Holtzman & Coleman* and *Robert R. Dalton*, for appellant.

*Joseph R. Roach* and *Clifford C. Kealing*, for appellee.

ENLOE, J.—The record in this case discloses that, prior to June, 1920, one Oscar H. Bloom, under the name and style of "Central Meat Market," was conducting a business at No. 245 East Washington street, Indianapolis; that said Bloom was adjudged a bankrupt by the decree of the United States District Court for the district of Indiana, and one Roy Sahm appointed as receiver; that, as such receiver, on July 22, 1920, he sold and transferred to appellant herein, for and in consideration of $5,500, all of the goods, wares, merchandise, furniture and fixtures theretofore owned by said Oscar Bloom and contained in the store-room located at No. 245 East Washington street, Indianapolis, and known as "Central Meat Market," free and clear of all incumbrance.

On July 26, 1920, appellant executed a bill of sale for said property so purchased to one Sam Davis, his brother, the consideration being, as testified by appellant, the same sum as that paid by him for said prop-

erty. There is evidence tending to show that said place was opened as a place of business on July 28, 1920, and there is no evidence that it was, after said sale by said receiver, opened at an earlier date, with the said Oscar Bloom in charge thereof as manager.

The record further discloses that on August 5, 1920, a certificate signed "S. Davis," and which said Sam Davis testified was signed by himself, duly verified by his affidavit, was filed in the office of the Clerk of the Circuit Court of Marion county, Indiana, in which it was stated that the Central Meat Market, 245 East Washington street, Indianapolis, Indiana, was owned by Sam Davis, who resided at No. 332 North Fulton street, Indianapolis, Indiana. This certificate was made and filed in obedience to the requirements of §12160 Burns 1926, §9711a Burns 1914, Acts 1909 p. 358.

It further appears that late in the year 1920, suit was brought against said Sam Davis by one of his creditors, and such proceedings were thereafter had in said cause that the appellee herein was appointed as receiver of the property of said Sam Davis, and that as such appointee, he at once duly qualified, took charge of the business and assets of said insolvent, and that later, as such receiver, he brought this suit.

The complaint is in nineteen (19) paragraphs, each of which is based upon a separate claim of an individual creditor of the Central Meat Market, which claims amounted in the aggregate to $15,246.96. The several paragraphs are alike, except as to the name of the individual creditor and the amount of the claim. The following averment, found in each of said paragraphs, shows the basis of the claim made by appellee. The said averment is as follows: . "The said David Davis caused it continuously to be believed by all persons dealing with and extending credit as aforesaid to the said Central Meat Market that he, the said David

Davis, was continuously operating the same, and that all debts and liabilities arising from said operation would be and were the legal debts and liabilities of the said David Davis."

This cause was argued orally, and, upon such argument, counsel for appellee, upon being interrogated as to the theory of the complaint herein, stated that the theory of the complaint was, "that David Davis had fraudulently held himself out to said creditors as being the real owner of said business, and thereby procured the sale of said merchandise, and that by reason of these facts, David Davis was liable to each of said creditors for the goods so sold." The case was evidently tried upon the above declared theory.

Conceding, without deciding, as the question is not involved in this appeal, that the averments of each paragraph of said•complaint are sufficient to show a right of action in each of said several named creditors as against appellant for the amount of said merchandise so sold by each of them and now remaining unpaid, yet, the question remains—What right had the receiver to bring and maintain this action?

It is not claimed by counsel for appellee that the receiver herein has any unusual or extraordinary powers, either by virtue of any statute, or by virtue of the provisions of the decree of the court appointing him as such receiver; he is simply a receiver, appointed by a court of competent jurisdiction, in the usual way, and possessing the powers usually incident to such a receivership. And the question now arises—What are the usual powers of such a receiver?

The statutes of this state do not specifically declare the rights and powers of a receiver, and we must therefore look to the decisions of our courts for an

1.  answer to the above question. The authorities declare that the powers of such a receiver are,

generally, to seize and hold, and take charge of all property in the hands of the insolvent; to recover such property as has been illegally transferred by him in fraud of the rights of creditors; to collect all claims existing in favor of the insolvent. Occasionally, there are other and additional duties, arising from the particular circumstances, as the duty to bring action against the officers of an insolvent corporation where loss has been sustained by the corporation by reason of their culpable negligence, as in the case of *Coddington* v. *Canaday* (1901), 157 Ind. 243, but these duties are exceptional, and the present case does not fall within any of them.

In *Runner, Assignee,* v. *Dwiggins* (1897), 147 Ind. 238, the assignee of an insolvent bank had brought suit against one of the holders of stock in said bank, seeking to recover money due upon the statutory liability of such stockholder. The court, in passing upon the matter, said: "Certainly, it cannot be asserted with any reasonable support, that this peculiar liability imposed by the statute upon those who became shareholders of a banking association organized under existing law, is in any sense an asset, right or interest of the bank which it, as an insolvent debtor, can by its deed of assignment pass to its assignee, or in any manner vest the exercise thereof in him. In the absence of some statutory provision conferring the right, neither the corporation nor its assignee, nor receiver can enforce such a liability as that in question. The statute creating the liability against the stockholders, was enacted for the benefit of creditors of the bank, and it is these creditors, when the right of action accrues, that are authorized under our present statute, to maintain the action. This doctrine is affirmed and settled by many authorities."

In *Marion Trust Co.* v. *Blish* (1908), 170 Ind. 686,

the court quotes from High, Receivers, (3d ed.) §315, as follows: "While the receiver of an insolvent corporation is thus treated as the representative of both creditors and shareholders, so far as any beneficial interest is concerned, yet, for the purpose of determining the nature and extent of his title, he is regarded as representing only the corporate body itself, and not its creditors or shareholders, being vested by law with the estate of the corporation, and *deriving his own title under and through it.* For the purpose of litigation, therefore, he takes only the rights of the corporation, such as could be asserted in its own name, and upon that basis only can he litigate for the benefit of either shareholders or creditors, except when acts have been done in fraud of the rights of the latter, but valid as against the corporation itself, in which case he holds adversely to the corporation." (Our italics.)

The rules governing the rights of receivers, other than those which are statutory, are of equitable origin, and one of these rules is: "A receiver cannot

2-4. maintain an action in which the granting of the relief sought would place the creditor having an equity in a worse condition, and the creditor having no equity in a better condition, than they occupied before his appointment." *American Trust, etc., Bank* v. *McGettigan, Rec.* (1899), 152 Ind. 582. The facts involved in the case at bar furnish a forceful illustration of the application of the above rule, and of why the receiver in this case should not be permitted to maintain this action. The record herein discloses that, outside of the several persons named in the several paragraphs of complaint herein, there were a number of other persons, creditors of said Sam Davis, who are making no claim of fraud as against the appellant, in the matter of their extending credit to said Sam Davis; they are, so far as this record discloses, simply creditors of Sam Davis,

nothing more, and their claims amount in the aggregate to several thousand dollars. Now, if it be conceded that, under the allegations of the complaint, F. D. Gardner and Company, a creditor named in one paragraph of complaint and for whom appellee is trying to maintain this suit, has a right of action against appellant, on the cause of action in said paragraph of complaint stated, then said Gardner and Company is entitled to recover of and from appellant the full amount of its said claim, and so also with each of the other several creditors named in said complaint. But, if the said receiver can, as such, maintain this suit, then the result would be that any money recovered by him would go into the hands of said receiver, as general assets, to be distributed pro rata among the different creditors, and those creditors of Sam Davis who had no claim whatever against appellant would share in such distribution to the prejudice of said Gardner and Company and other creditors who have valid claims against appellant. The record herein discloses that the total of all claims against Sam Davis filed with the receiver is $25,614.83; that the receiver had in his hands in cash, $5,756.83, to which we add the amount of the judgment herein, viz.: $11,990.20, making a total of assets of $17,747.03, with which, after the payment of costs and expenses of the receivership, to discharge said indebtedness of more than $25,000, and with the inevitable result that all of said creditors named in said complaint will, instead of receiving the amount justly due them, receive only a small per cent. of their said indebtedness, and that those who have no just claim thereon will profit as to their claims at the expense of the claimants named in this suit as having been defrauded.

As this cause was tried, decided, and the judgment rendered upon an erroneous theory of the law governing the rights, powers and duties of a receiver, it necessa-

rily follows that the decision of the trial court herein was contrary to law, and this cause must be reversed. As the said complaint proceeds upon an erroneous theory as to right of said receiver herein to bring and maintain this action, and as said receiver has no such right, as to said claims, it follows that said complaint cannot be so amended as to make the same good. This cause is therefore reversed, with directions to the trial court to sustain appellant's motion for a new trial, and to dismiss said cause and render judgment accordingly.